******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STATE OF CONNECTICUT *v.* JOSEPH C. ACAMPORA, JR.
## (AC 38468)

DiPentima, C. J., and Alvord and Bear, Js.

*Syllabus*

Convicted of the crimes of assault of a disabled person in the third degree and disorderly conduct, the defendant appealed to this court. He claimed, inter alia, that the trial court violated his constitutional right to counsel when it permitted him to represent himself at arraignment and during plea negotiations without obtaining a valid waiver of his right to counsel. *Held*:

1. The trial court did not abuse its discretion when it determined that the defendant knowingly, intelligently and voluntarily waived his right to counsel and invoked his right to self-representation: that court had no duty to canvass the defendant concerning his waiver of the right to counsel and his invocation of the right to self-representation until he clearly and unequivocally invoked his right to self-representation, which he did not do at arraignment, and although the defendant clearly and unambiguously invoked his right to self-representation at a pretrial hearing, the court canvassed the defendant that same day; moreover, to the extent that the defendant claimed that the court violated his right to counsel by not canvassing him prior to the date of that hearing, this court declined to review that claim, the defendant having raised the claim for the first time in his reply brief and there having been no exceptional circumstances to warrant a consideration of the claim.

2. The defendant could not prevail on his claim that the court's canvass at the pretrial hearing was constitutionally inadequate because the court did not explain in sufficient detail the nature of the charges against the defendant and did not advise him of specific dangers and disadvantages of self-representation: it was not necessary that the defendant be specifically informed of the particular elements of the crimes he was charged with before being permitted to waive counsel and to proceed pro se, as the court advised the defendant of the statutory names of the charges pending against him as well as the penalties associated with those charges, the elements of which were relatively straightforward and aligned with the statutory names of the offenses, and the court reasonably could have concluded that the defendant understood the nature of the charges against him sufficiently to render his waiver of the right to counsel knowing and intelligent; moreover, during its canvass, the court explored the defendant's lack of familiarity with substantive law and procedural rules, and alerted him to the fact that he would be expected to educate himself on those areas of the law and procedure and to comply with the same rules that govern attorneys during trial, and that discussion sufficiently apprised the defendant of the general dangers and disadvantages associated with self-representation, as opposed to representation by an attorney trained in the law.

3. The defendant could not prevail on his unpreserved claim that the trial court violated his right to present a defense by improperly denying his motion to open the evidence so that he could present the testimony of an objective third party witness who would have been able to directly attack the credibility of the victim as to whether an ambulance had been dispatched to his residence on the date of the incident at issue; the evidence that the defendant sought to admit would not have been admissible in his case-in-chief, as it was a voice mail message that constituted inadmissible hearsay, the defendant did not identify any exception to the hearsay rule that would have permitted its admission, and even if the court interpreted the defendant's statements about the voice mail as a request to open the evidence, the testimony about whether an ambulance was dispatched to the victim's residence related to a collateral matter and not a material issue, and the impeachment of the victim's testimony on a collateral matter through extrinsic evidence was not permitted under our rules of evidence.

Argued May 22—officially released September 5, 2017

Substitute information charging the defendant with the crimes of assault of a disabled person in the third degree, disorderly conduct and interfering with an emergency call, brought to the Superior Court in the judicial district of New Haven, geographical area number seven, and tried to the jury before *Klatt, J.*; thereafter, the court denied the defendant's motion to open the evidence; verdict and judgment of guilty of assault of a disabled person in the third degree and disorderly conduct, from which the defendant appealed to this court. *Affirmed.*

*Mary A. Beattie*, assigned counsel, for the appellant (defendant).

*Michele C. Lukban*, senior assistant state's attorney, with whom, on the brief, were *Patrick J. Griffin*, state's attorney, and *James R. Dinnan*, senior assistant state's attorney, for the appellee (state).

*Opinion*

ALVORD, J. The defendant, Joseph C. Acampora, Jr., appeals from the judgment of conviction, rendered after a jury trial, of one count of assault of a disabled person in the third degree in violation of General Statutes § 53a-61a and one count of disorderly conduct in violation of General Statutes § 53a-182 (a) (1). The defendant was found not guilty of interfering with an emergency call in violation of General Statutes § 53a-183b. The defendant represented himself at trial. On appeal, the defendant claims that the trial court (1) violated his right to counsel under the sixth and fourteenth amendments to the United States constitution when it permitted him to represent himself without obtaining a valid waiver of his right to counsel and (2) violated his right to present a defense, as guaranteed by the sixth and fourteenth amendments to the United States constitution, when it denied his motion to open the evidence. We affirm the judgment of the trial court.

On the basis of the evidence presented at trial, the jury reasonably could have found the following facts. The defendant and the victim, Anthony Toth, are brothers. The victim has cerebral palsy. In August, 2011, they shared an apartment in a multifamily house with their mother. At approximately 11:40 a.m. on August 3, 2011, the defendant entered the victim's bedroom and grabbed him. The defendant accused the victim's friend of putting a hole in the windshield of his van when they were setting off fireworks the night before. The defendant slapped and punched the victim in the face and head, and dragged him about the apartment. When the victim grabbed his phone, the defendant took it from him and threw it, causing the battery to fall out. Thereafter, the defendant called the Wallingford Police Department to report that his van had been vandalized, and the victim called the police to report the assault after he located and replaced his phone's battery.

At approximately noon that same day, Officer James Onofrio was dispatched to the defendant and the victim's residence in response to the defendant's vehicle vandalism complaint. When Onofrio arrived, he met with the defendant outside and examined the defendant's damaged windshield. The defendant explained that he believed that the victim's friend had damaged the windshield with a firework the night before, but he admitted that he had no proof of who caused the damage. While talking to the defendant, police dispatch informed Onofrio of the victim's assault complaint. The defendant informed Onofrio that he needed to leave to go to a doctor, and Onofrio obliged because he did not know, at that time, that the defendant was the subject of the assault complaint.

Onofrio met the victim in his apartment. The victim had a cut on his nose and blood on his nose, neck, and

arm, and he explained to Onofrio that the defendant had assaulted him earlier that day because he believed that the victim's friend damaged his van's windshield. Consistent with the victim's complaint, a neighbor informed Onofrio that approximately fifteen minutes before he had arrived in response to the defendant's vehicle vandalism complaint, she had heard the defendant yelling and "loud banging and a lot of commotion" coming from the defendant and victim's apartment.

Thereafter, the defendant was charged with assault of a disabled person in the third degree, disorderly conduct, and interfering with an emergency call. After a jury trial, at which the defendant represented himself, the defendant was found guilty of assault of a disabled person in the third degree and disorderly conduct. The defendant was found not guilty of interfering with an emergency call. The court sentenced the defendant to a total effective sentence of one year of imprisonment. This appeal followed.

I

We begin with the defendant's claim that his right to counsel was violated when the court permitted him to represent himself without obtaining a valid waiver of his right to counsel. Specifically, the defendant claims that the court improperly permitted him to represent himself at arraignment and during plea negotiations without canvassing him concerning his waiver of his right to counsel. The defendant also claims that the canvass performed by the court at a pretrial proceeding on February 23, 2012, was constitutionally inadequate. We reject both of these claims.

The following additional facts are relevant to these claims. On September 14, 2011, the defendant appeared for arraignment unrepresented by counsel. Because the case involved allegations of domestic violence, a discussion was held concerning whether family services, part of the Court Support Services Division, was going to be involved in the case, whether a protective order needed to be put in place, and what the conditions of that order should be because the defendant and the victim lived together. The defendant declined the assistance of family services, and the court, *Scarpellino, J.*, ultimately agreed to permit the defendant to return to the apartment that he shared with the victim. The court continued the matter for one week so that family services could contact the victim and obtain more information. The following week, on September 21, 2011, family services indicated that it had still been unable to contact the victim, and the court granted another continuance.

Between September 28, 2011, and November 29, 2011, the defendant requested and received four continuances so that he could retain counsel. At the hearing on November 29, 2011, the following colloquy occurred:

"[The Prosecutor]: [The defendant] is asking for a

continuance to hire an attorney.

"[The Defendant]: Still going.

"The Court: One week.

"[The Defendant]: One week.

"The Court: Well, how many times do you want me to continue? You know—

"[The Defendant]: —well, listen, I'm not the one pursuing the case. You guys are coming after me, so—

"The Court: Yeah, well—

"[The Defendant]: —I mean—

"The Court: —you can get a public defender—

"[The Defendant]: —I don't—I'll represent myself, Your Honor.

"The Court: Did you apply for a public defender?

"[The Defendant]: I, I got too much unemployment. I get just enough not to get it, and—

"The Court: All right. What was the offer on this?

"[The Prosecutor]: There hasn't been one because he wanted to retain the services of counsel.

"The Court: Once you tell the prosecutor you want a lawyer, the prosecutor is going to—

"[The Defendant]: Well, no. I did not tell him that.

"The Court: All right.

"[The Defendant]: They told me to get a lawyer, Your Honor. So—

"The Court: All right, well, because, so, so, then give him—send it back and then give him an offer."

Thereafter, the defendant interjected that the case was "ridiculous . . . ." The court explained to the defendant that "the charge that's there . . . carries a mandatory year in jail. You, you need to get an attorney . . . ." The defendant proceeded to argue about why the case was "based on a bunch of crap" and stated: "And now, you—I, I,—if you want a big trial thing about it, then I'd rather represent myself and I'll do my own investigation. . . . Because, honestly, from what I see of attorneys, I believe I can do a better job myself." The court said, "All right," and the defendant asked, "So, we'll give it one week again?" The court instructed the defendant to talk to the prosecutor about his case first. When the defendant's case was recalled, the prosecutor indicated that he was unable to have a "cogent conversation" with the defendant and stated that the defendant "really needs an attorney to help him out." The court therefore granted the defendant's motion for a continuance.

On December 13, 2011, after the defendant's case was called, the prosecutor noted that "[t]his is a matter

that's been continued since September 14 [2011] at the request of the defendant each time to hire counsel. The state's made an offer." The court asked the defendant how his efforts to retain counsel were proceeding. The defendant responded: "Saving up [for an attorney]. I got, like, $500 saved, and the lowest I got they want is, like, $800. So, I'm unemployed. So, I've been unemployed. So, plus, I pay my rent. I mean, I only get so much from unemployment." The court agreed to continue the case so that the defendant could continue his efforts to retain counsel. Between December 29, 2011, and February 16, 2012, the court continued the case five additional times so that the defendant could retain counsel.[1]

On February 23, 2012, the state explained to the court, *McNamara*, *J.*, that the defendant's case had been continued several times so that the defendant could retain counsel. The court asked the defendant whether he had in fact retained an attorney. The defendant replied: "No. Um, well, I'm on unemployment. The person was my brother. I called the police. I don't believe I need a lawyer. I don't want a lawyer. I don't have the money to afford a lawyer." When the court mentioned Judge Scarpellino, the defendant interjected: "I asked him to go on the jury trial." The court asked the defendant whether he had asked for more time to retain an attorney, and the defendant indicated that he had. The defendant explained that he had been saving money over the last several weeks for an attorney, and he stated that "if I need to represent myself, I will, Your Honor, I will. . . . I don't believe I really need to . . . sacrifice . . . not paying my rent to hire an attorney for . . . for a junk case."

The court engaged in a discussion with the defendant concerning his attempts to retain counsel. The defendant stated: "They offered me forty-five days, which I will not accept. So, the next move would have to be trial. So, if we can start picking and maybe I'll have to—if I lose trial, I'll . . . maybe I'll . . . I'll save my money for the appeal." The court asked the state whether an offer had been made, and the state responded that one had been made in December, 2011. The defendant confirmed that he was rejecting that offer. The court stated that it would place the case on the firm trial list and canvassed the defendant concerning his waiver of the right to counsel and invocation of his right to self-representation. After completing its canvass, the court found, inter alia, that the defendant knowingly, intelligently, and voluntarily waived his right to counsel.

Having reviewed the relevant factual and procedural history, we now turn to the legal principles that guide our analysis of the defendant's claims. The sixth amendment to the United States constitution, as made applicable to the states by the fourteenth amendment,

embodies the right to counsel at all critical stages of a criminal prosecution, including arraignment[2] and plea negotiations. See *State* v. *Braswell*, 318 Conn. 815, 827, 123 A.3d 835 (2015); *State* v. *Pires*, 310 Conn. 222, 230, 77 A.3d 87 (2013); see also *Gonzalez* v. *Commissioner of Correction*, 308 Conn. 463, 474–84, 68 A.3d 624 (defendant's arraignment was critical stage because of presentence confinement issues that arose), cert. denied sub nom. *Dzurenda* v. *Gonzalez*, U.S. , 134 S. Ct. 639, 187 L. Ed. 2d 445 (2013); *Mahon* v. *Commissioner of Correction*, 157 Conn. App. 246, 253, 116 A.3d 331 ("[p]retrial negotiations implicating the decision of whether to plead guilty [are] a critical stage in criminal proceedings" [internal quotation marks omitted]), cert. denied, 317 Conn. 917, 117 A.3d 855 (2015); accord *Davis* v. *Greiner*, 428 F.3d 81, 87 (2d Cir. 2005) ("[i]t is well settled a defendant's Sixth Amendment right to counsel extends to plea negotiations").

"Embedded within the sixth amendment right to assistance of counsel is the defendant's right to elect to represent himself, when such election is voluntary and intelligent. . . . [T]he right to counsel and the right to self-representation present mutually exclusive alternatives. . . . Although both rights are constitutionally protected, a defendant must choose between the two. . . . We require a defendant to clearly and unequivocally assert his right to self-representation because the right, unlike the right to the assistance of counsel, protects interests other than providing a fair trial, such as the defendant's interest in personal autonomy. . . . Put another way, a defendant properly exercises his right to self-representation by knowingly and intelligently waiving his right to representation by counsel. . . . Once the right has been invoked, the trial court must canvass the defendant to determine if the defendant's invocation of the right, and simultaneous waiver of his right to the assistance of counsel, is voluntary and intelligent." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *State* v. *Braswell*, supra, 318 Conn. 827–28.

"In the absence of a clear and unequivocal assertion of the right to self-representation [however], a trial court has no independent obligation to inquire into the defendant's interest in representing himself . . . . [Instead] recognition of the right becomes a matter entrusted to the exercise of discretion by the trial court." (Internal quotation marks omitted.) *State* v. *Pires*, supra, 310 Conn. 231. "In the exercise of that discretion, the trial court must weigh into the balance its obligation to indulge in every reasonable presumption against waiver of the right to counsel." (Internal quotation marks omitted.) *State* v. *Carter*, 200 Conn. 607, 614, 513 A.2d 47 (1986).

"We ordinarily review for abuse of discretion a trial court's determination, made after a canvass . . . that

a defendant has knowingly and voluntarily waived his right to counsel. . . . In cases . . . where the defendant claims that the trial court improperly failed to exercise that discretion by canvassing him after he clearly and unequivocally invoked his right to represent himself . . . whether the defendant's request was clear and unequivocal presents a mixed question of law and fact, over which . . . our review is plenary." (Citation omitted; internal quotation marks omitted.) *State* v. *Jordan*, 305 Conn. 1, 13–14, 44 A.3d 794 (2012).

A

The defendant first claims that the court deprived him of his right to counsel when it permitted him to represent himself at arraignment and during plea negotiations without being canvassed concerning his waiver of the right to counsel and invocation of the right to self-representation. That is, the defendant contends that a trial court's duty to canvass is triggered whenever a defendant appears at a critical stage of the proceeding unrepresented by counsel. The defendant's argument is predicated on the assumption that "[t]he right to self-representation is not triggered until the court has canvassed a defendant in accordance with Practice Book § 44-3 and the defendant has effectively waived the right to counsel." The defendant misapprehends our jurisprudence concerning the invocation of the right to self-representation and a trial court's duty to canvass.

"State and federal courts consistently have discussed the right to self-representation in terms of invoking or asserting it . . . and have concluded that there can be no infringement of the right to self-representation in the absence of a defendant's proper assertion of that right. . . . The threshold requirement that the defendant clearly and unequivocally invoke his right to proceed pro se is one of many safeguards of the fundamental right to counsel. . . . Accordingly, [t]he constitutional right of self-representation depends . . . upon its invocation by the defendant in a clear and unequivocal manner. . . . *In the absence of a clear and unequivocal assertion of the right to self-representation, a trial court has no independent obligation to inquire into the defendant's interest in representing himself* . . . . [Instead] recognition of the right becomes a matter entrusted to the exercise of discretion by the trial court." (Emphasis added; internal quotation marks omitted.) *State* v. *Pires*, supra, 310 Conn. 231.

This constitutional rule "is grounded in the policy and practical consideration that, such advices [about the right to self-representation] might suggest to the average defendant that he could in fact adequately represent himself and does not need an attorney, and it would be fundamentally unwise to impose a requirement to advise of the self-representation procedure which, if opted for by the defendant, is likely to be to no one's benefit. . . . It also is consistent with well

settled Connecticut law, that, [i]n the absence of a clear and unequivocal assertion of the right to self-representation, *a trial court has no independent obligation to inquire into the defendant's interest in representing himself, because the right of self-representation, unlike the right to counsel, is not a critical aspect of a fair trial*, but instead affords protection to the defendant's interest in personal autonomy." (Citations omitted; emphasis in original; internal quotation marks omitted.) Id., 248.

Accordingly, the court had no duty to canvass the defendant concerning his waiver of the right to counsel and his invocation of the right to self-representation until he clearly and unequivocally invoked his right to self-representation.

B

We next address whether and when the defendant invoked his right to self-representation. It is undisputed that the defendant did not clearly and unambiguously invoke his right to counsel at arraignment. It is also undisputed that the defendant clearly and unambiguously invoked his right to self-representation on February 23, 2012, and that the court canvassed the defendant that same day. To the extent that the defendant further claims that the court violated his right to counsel by not canvassing him prior to February 23, 2012, however, we conclude that such a claim is unreviewable.

In his opening brief, the defendant argued only that the court violated his right to counsel by permitting him to represent himself at critical stages of the proceedings without canvassing him as to his waiver of his right to counsel and invocation of his right to self-representation. In its brief, the state responded that the court was not required to canvass the defendant until he clearly and unequivocally invoked his right to self-representation. The state further observed: "The record reveals, and the defendant does not assert otherwise, that he did not clearly and unequivocally invoke his right to self-representation until February 23, 2012." The state did not thereafter address whether the defendant clearly and unequivocally invoked his right to self-representation prior to February 23, 2012. In his reply brief, the defendant continued to maintain that because it was "obvious" that he was representing himself at arraignment and during plea negotiations, the court was required to canvass him. In the alternative, the defendant argued that, even if he was required to clearly and unequivocally invoke his right to self-representation, he did so on November 29, 2011, and February 23, 2012.[3] The defendant claimed therefore that the court violated his right to counsel by not canvassing him before he engaged in plea negotiations with the state on November 29, 2011, and rejected the state's plea offer on February 23, 2012.

"It is axiomatic that a party may not raise an issue for the first time on appeal in its reply brief. . . . Our practice requires an appellant to raise claims of error in his original brief, so that the issue as framed by him can be fully responded to by the appellee in its brief, and so that we can have the full benefit of that written argument. Although the function of the appellant's reply brief is to respond to the arguments and authority presented in the appellee's brief, that function does not include raising an entirely new claim of error." (Citations omitted; internal quotation marks omitted.) *Crawford* v. *Commissioner of Correction*, 294 Conn. 165, 197, 982 A.2d 620 (2009). Exceptional circumstances may persuade us to consider an issue raised for the first time in a reply brief. See, e.g., *State* v. *McIver*, 201 Conn. 559, 563, 518 A.2d 1368 (1986) (permitting defendant to raise issue for first time in reply brief because record adequately supported claim defendant had been deprived of fundamental constitutional right and fair trial); see also *Curry* v. *Burns*, 225 Conn. 782, 789 n.2, 626 A.2d 719 (1993) (permitting appellant in reply brief to join amicus curiae request to overrule prior case law); *37 Huntington Street, H, LLC* v. *Hartford*, 62 Conn. App. 586, 597 n.17, 772 A.2d 633 (addressing issue raised in reply brief where appellant had no earlier opportunity to respond to issues raised in briefs filed by amici curiae), cert. denied, 256 Conn. 914, 772 A.2d 1127 (2001).

No exceptional circumstances exist that persuade us to consider this issue, which was raised for the first time in a reply brief. Therefore, we decline to review the defendant's belated claim that he clearly and unequivocally invoked his right to self-representation on November 29, 2011, and that the court violated his right to counsel by not canvassing him on that date.

C

The defendant next claims that the court's canvass on February 23, 2012, was constitutionally inadequate because the court failed to explain to him in sufficient detail the nature of the charges and to advise him of specific dangers and disadvantages of self-representation. We disagree.

The following additional facts are relevant to the defendant's claim. On February 23, 2012, the court, *McNamara, J.*, canvassed the defendant concerning his waiver of his right to counsel and invocation of his right to self-representation. In relevant part, the court engaged in the following colloquy with the defendant concerning the charges pending against him:

"The Court: All right. Do you understand the charges that you are facing, sir?

"[The Defendant]: Yes, I do.

"The Court: You are facing the charge of assault in

the third degree—is it a victim over sixty—of a victim over sixty?

"[The Prosecutor]: It's on a disabled person. Correct.

"The Court: A disabled person.

"[The Prosecutor]: Correct.

"The Court: Interfering with an emergency call and disorderly conduct. Do you understand that?

"[The Defendant]: Yes, I do.

"The Court: Do you understand the minimum and maximum penalties of these charges?

"[The Defendant]: Do I understand the minimum—

"The Court: —and maximum penalties in these charges.

"[The Defendant]: What are they? I don't think they were told to me.

"The Court: All right. For the assault on a person, disabled person—

"[The Prosecutor]: It's a one year minimum, one year maximum.

"The Court: —is a one year minimum, mandatory minimum, which means that if you were convicted you would do a minimum time of one year in jail for that charge alone. All right. For the charge of interfering with an emergency call, you would—that would be a [class] C mis—let me see—that would be a [class] A misdemeanor. You can get another year in jail, plus a $2000 fine. And disorderly conduct is ninety days and [a] $500 fine. So, now you understand the penalties involved. Is that right?

"[The Defendant]: Yes, I do, Your Honor."

The court also canvassed the defendant concerning his education and experience with the law, as well as his obligation to educate himself on the relevant law and procedure and to comply with the same rules that govern attorneys during trial:

"The Court: And how far have you gone in school?

"[The Defendant]: I graduated high school.

"The Court: Can you read?

"[The Defendant]: Yes, Your Honor.

"The Court: All right. You know you have a right to counsel?

"[The Defendant]: Yes, Your Honor.

"The Court: All right. Have you ever been involved in a criminal trial before?

"[The Defendant]: In a trial? No, Your Honor.

"The Court: All right. Have you ever been the subject

of a competency evaluation?

"[The Defendant]: No, Your Honor.

"The Court: Did you represent yourself during any cases at all?

"[The Defendant]: Criminally, no.

"The Court: Any cases at all, I said.

"[The Defendant]: Um, up at the appellate division in Hartford. Yes. Back in last year. Yes, I did. . . .

"The Court: All right. Are you familiar with the laws and rules of procedure regarding evidence, pretrial motions, voir dire for criminal trials?

"[The Defendant]: Um, no, Your Honor.

"The Court: All right. Are you familiar with the rules of discovery for criminal matters, sir?

"[The Defendant]: No, Your Honor.

"The Court: Do you realize that, if you represent yourself, the judge will be impartial and cannot advise you on the procedures, [substantive] issues in the case?

"[The Defendant]: I understand that now.

"The Court: All right. Are you familiar with plea bargaining?

"[The Defendant]: Yes, I am.

"The Court: Can you do that yourself?

"[The Defendant]: Yes. I believe I could.

"The Court: Okay. Are you—do you have access to a library to learn these things that you need to understand before you go to trial?

"[The Defendant]: Yes, I do, ma'am.

"The Court: Can you conduct yourself at a trial?

"[The Defendant]: I believe so.

"The Court: All right. So, you feel you possess the training, education, and experience and skill to represent yourself and to try the case yourself. Is that true, sir?

"[The Defendant]: Yeah. Yes, sir, Your Honor.

"The Court: All right.

"[The Defendant]: I believe I can.

"The Court: You understand that you can't have an attorney and represent yourself? You either represent yourself, or you have an attorney represent you. You understand that, sir?

"[The Defendant]: Yes, I do.

"The Court: All right.

"[The Defendant]: But I have one question.

"The Court: And, at trial, you will be at the counsel table all by yourself. You understand that?

"[The Defendant]: Yes.

"The Court: You'll be sitting there presenting your case on your own. Now, when you have a criminal trial, you're expected to follow the rules and procedures that we make the lawyers follow.

"[The Defendant]: Okay. Can I have one of my—if someone decides to, can I have an attorney present in the courtroom while it's being—

"The Court: —You can't have the attorney sit with you at the table.

"[The Defendant]: I can't have anyone even sit—I don't want to have my—

"The Court: He—if he—he can sit—

"[The Defendant]: I'm sorry. Okay.

"The Court: —he can sit in the courtroom—

"[The Defendant]: That's fine. That's fine.

"The Court: —if you—

"[The Defendant]: He can hear the case.

"The Court: —he can sit in the courtroom, but—

"[The Defendant]: Excellent.

"The Court: —if you decide you want the attorney to represent you, that attorney would file an appearance and be present. You understand that?

"[The Defendant]: Yeah. No. I want to represent myself.

"The Court: All right. So, is it your wish today to proceed to trial and represent yourself?

"[The Defendant]: Yes, it is, Your Honor.

"The Court: Is this your decision?

"[The Defendant]: This is my decision in full.

"The Court: Are you making it voluntarily and of your own free will?

"[The Defendant]: Yes. Yes, ma'am.

"The Court: And no one has found—has threatened you or promised you. Is that right?

"[The Defendant]: That's correct."

After completing its canvass, the court found, inter alia, that the defendant knowingly, intelligently, and voluntarily waived his right to counsel.

"The United States Supreme Court has explained: [I]n order competently and intelligently to choose self-representation, [a defendant] should be made aware of the dangers and disadvantages of self-representation,

so that the record will establish that he knows what he is doing and his choice is made with eyes open. . . . That court further explained that a record that affirmatively shows that the defendant is literate, competent, and understanding, and that he [is] voluntarily exercising his informed free will is sufficient to support a finding that the defendant voluntarily and intelligently invoked his right. . . . Practice Book § 44-3[4] serves to guide our trial courts in making this inquiry. . . . Nevertheless, [b]ecause the . . . inquiry [under § 44-3] simultaneously triggers the constitutional right of a defendant to represent himself and enables the waiver of the constitutional right of a defendant to counsel, the provision of § [44-3] cannot be construed to require anything more than is constitutionally mandated. . . . Thus, the court need not question a defendant regarding all of the . . . § 44-3 factors. . . . Instead, the analysis under that rule of practice is designed to help the court answer two questions: [W]hether a criminal defendant is minimally competent to make the decision to waive counsel, and . . . whether the defendant actually made that decision in a knowing, voluntary and intelligent fashion." (Citations omitted; footnote in original; internal quotation marks omitted.) *State* v. *Braswell*, supra, 318 Conn. 828–29.

"The fact that the defendant's decision to represent himself was misguided or based on his erroneous perceptions of . . . his own ability to defend himself and resulted in a conviction is of no consequence. We review the record to determine whether the trial court properly concluded that the defendant was competent to make the decision to waive counsel, and that his decision was made in a knowing, voluntary and intelligent fashion." (Internal quotation marks omitted.) *State* v. *Taylor*, 63 Conn. App. 386, 403, 776 A.2d 1154, cert. denied, 257 Conn. 907, 777 A.2d 687, cert. denied, 534 U.S. 978, 122 S. Ct. 406, 151 L. Ed. 2d 308 (2001).

On February 23, 2012, the court encountered, by all appearances, a competent defendant seeking to represent himself. The defendant claimed that he had been attempting for months to retain counsel without success. The defendant explained that, although he knew that he had the right to counsel, he was not financially able to retain counsel at that time, that he prioritized paying his rent over paying for an attorney, and that he would prefer to save his money to hire appellate counsel, if necessary, rather than trial counsel. The court then canvassed the defendant concerning his educational background, experience with the law, and his obligations when representing himself. The defendant confirmed that he could read. He further acknowledged that he had only a high school education, had never been involved in a criminal trial before, had never represented himself in a criminal proceeding, and was not familiar with the laws and rules of procedure regarding evidence, pretrial motions, voir dire, and discovery in

criminal matters. The court admonished the defendant that "if you represent yourself, the judge will be impartial and cannot advise you on the procedures, [substantive] issues in the case . . . ." The court asked the defendant whether he had "access to a library to learn these things that you need to understand before you go to trial . . . ." The court then cautioned the defendant that "when you have a criminal trial, you're expected to follow the rules and procedures that we make the lawyers follow," and that, although he could have an attorney sit in the courtroom, he could not have the attorney sit with him at the table unless the attorney filed an appearance in the case. Finally, toward the end of its canvass, the court advised the defendant that, if he changed his mind, he could have an attorney file an appearance in the case and be present at trial. The defendant affirmatively responded to each of these admonitions but maintained, "I want to represent myself." On the basis of this record, the court reasonably could have concluded that the defendant was literate, competent, that he possessed sufficient understanding of the duties of self-representation, and that he was voluntarily exercising his informed free will by waiving his right to counsel and invoking his right to self-representation. See *State* v. *Braswell*, supra, 318 Conn. 828–29.

The defendant nonetheless contends that his waiver of his right to counsel was not knowing and voluntary because the court did not engage in a "comprehensive discussion" with him concerning the elements of each pending charge. As we have previously stated, "the defendant need not be specifically informed of the particular elements of the crimes charged before being permitted to waive counsel and proceed pro se. In fact . . . perfect comprehension of each element of a criminal charge does not appear to be necessary to a finding of a knowing and intelligent waiver. . . . A discussion of the elements of the charged crimes would be helpful, and may be one of the factors involved in the ultimate determination of whether the defendant understands the nature of the charges against him. A description of the elements of the crime is not, however, a sine qua non of the defendant's constitutional rights in this context. Indeed, in our cases we have approved of a defendant's assertion of the right to proceed pro se where the record did not affirmatively disclose that the trial court explained the specific elements of the crimes charged to the defendant as long as the defendant understood the nature of the crimes charged. . . . In each of those cases, we concluded that the defendant had validly waived his right to counsel, although none of those decisions indicated that the defendant had been expressly apprised of the elements of the crimes charged." (Emphasis omitted; internal quotation marks omitted.) *State* v. *Bangulescu*, 80 Conn. App. 26, 45–46, 832 A.2d 1187, cert. denied, 267 Conn. 907, 840 A.2d

1171 (2003); accord *State* v. *Wolff*, 237 Conn. 633, 656, 678 A.2d 1369 (1996) (" 'perfect comprehension of each element of a criminal charge does not appear to be necessary to a finding of a knowing and intelligent waiver' ").

We recognize that because the defendant was never represented by counsel, the court could not appropriately presume that an attorney had explained the nature of the charges in detail to the defendant. See *State* v. *Caracoglia*, 95 Conn. App. 95, 113, 895 A.2d 810 ("[i]n general, a trial court may appropriately presume that defense counsel has explained the nature of the offense in sufficient detail" [internal quotation marks omitted]), cert. denied, 278 Conn. 922, 901 A.2d 1222 (2006). We disagree with the defendant, however, that, because he was never represented by counsel, the court was required to engage in a comprehensive discussion with him about the elements of the pending charges in order for his waiver to be valid. During the canvass, the court advised the defendant of the statutory names of the charges pending against him as well as the penalties associated with the charges. The elements of each of those charges are relatively straightforward and align with the statutory names of the offenses.[5] Cf. *State* v. *Frye*, 224 Conn. 253, 261–62, 617 A.2d 1382 (1992) (canvass inadequate where court failed to apprise defendant of complexity involved in defending himself against charge of possession of cocaine by person who is not drug-dependent because, during course of his defense, he would have to determine whether to present evidence of drug dependency, which "is a complex issue"). The defendant was also well aware of the factual underpinnings of those charges, i.e., his alleged assault of his brother, the victim, on the morning of August 3, 2011. As a result, the court reasonably could have concluded that the defendant understood the nature of the charges pending against him sufficiently to render his waiver of the right to counsel knowing and intelligent.

The defendant also claims that the court's canvass was inadequate because the court failed to apprise him of specific dangers and disadvantages associated with self-representation. To support this proposition, the defendant relies on several cases in which we have held that a canvass including an advisement about certain specific dangers or disadvantages associated with self-representation was constitutionally adequate. The fact that we held in these cases that a certain canvass was constitutionally adequate does not mean that the constitution requires all defendants to receive the same or a similar canvass as the one being examined in another case. "The defendant, however, does not possess a constitutional right to a specifically formulated canvass . . . . His constitutional right is not violated as long as the court's canvass, whatever its form, is sufficient to establish that the defendant's waiver was voluntary and

knowing." (Internal quotation marks omitted.) *State* v. *Diaz*, 274 Conn. 818, 831, 878 A.2d 1078 (2005). In the present case, the court explored during its canvass the defendant's lack of familiarity with substantive law and procedural rules, and alerted him to the fact that he would be expected to educate himself on these areas of the law and procedure and to comply with the same rules that govern attorneys during trial. This discussion was sufficient to apprise the defendant of the general dangers and disadvantages associated with self-representation, as opposed to representation by an attorney trained in the law.

Accordingly, we conclude that the court did not abuse its discretion when it determined that the defendant knowingly, intelligently, and voluntarily waived his right to counsel and invoked his right to self-representation on February 23, 2012.

## II

The defendant's final claim is that the trial court, *Klatt, J.*, abused its discretion and violated his right to present a defense when it denied his motion to open the evidence so that he could present the testimony of the battalion chief of the local fire department. In particular, the defendant contends that the denial of his motion to open violated his right to present a defense because the battalion chief was "an objective third party witness who would have been able to directly attack the credibility of the [victim] on a key point," i.e., whether an ambulance was dispatched to his and the victim's residence on August 3, 2011. The defendant seeks *Golding* review[6] of this unpreserved federal constitutional claim. The state argues that the court properly exercised its discretion when denying the defendant's motion to open the evidence and did not violate the defendant's right to present a defense because this evidence was inadmissible and related to a collateral issue at trial. We conclude that, although the defendant's claim is reviewable under the first and second prongs of *Golding*, the defendant has failed to prove that a constitutional violation exists and deprived him of a fair trial, as required by the third prong of *Golding*.

The following additional facts are relevant to this claim. On Thursday, July 16, 2015, trial commenced. The state presented the testimony of Onofrio and the victim. Onofrio testified, inter alia, that the victim had visible injuries to his face when he met with him and that the victim identified the defendant as his assailant. Through Onofrio, the state admitted into evidence photographs Onofrio took of the victim on August 3, 2011, which showed a bloody cut on the victim's nose and blood on his face, neck, and arm.

The victim testified that on August 3, 2011, the defendant accused the victim's friend of damaging the wind-

shield of the defendant's van with a firework and demanded to know the name of the victim's friend. The victim explained that during the course of their altercation, the defendant injured him and threw his phone while he was attempting to call 911. While discussing the sequence of events with the victim on cross-examination, the following exchange occurred:

"[The Defendant]: Did you ask them—when the police arrived, did you ask for medical attention?

"[The Victim]: Yes.

"[The Defendant]: *And you received an ambulance at the scene?*

"[The Victim]: *An ambulance came, yes.*

"[The Defendant]: *An ambulance came? Okay. I don't know. That wasn't in the [police] report.*

"[The Prosecutor]: Objection.

"The Court: Strike that comment.

"[The Defendant]: I'm sorry.

"The Court: Question only, sir." (Emphasis added.)

During his case-in-chief, the defendant first presented the testimony of his and the victim's mother, Karen Toth. Karen Toth testified that she was living with the defendant and the victim in August, 2011. She stated that on the morning of August 3, 2011, and prior to the altercation between the defendant and the victim, she noticed that the victim had a lot of bruising and scrapes on his face. Karen Toth explained that, over the years, the victim frequently fell because of his cerebral palsy and related seizures. After Karen Toth's testimony, the defendant testified, inter alia, that although he confronted the victim about whether he damaged the van's windshield, he never hit the victim and never took the victim's phone.

When the defendant completed his testimony, the court asked him whether he intended to call any additional witnesses, and the defendant began explaining a clerical issue he had with his subpoenas. The court interrupted the defendant and asked whether he would be calling any additional witnesses that day, and he stated that he would not. Thereafter, the jury was excused and the court discussed with the defendant the issue he had with his subpoenas. After that discussion, the court asked the defendant whether he in fact intended to call any other defense witnesses. The defendant stated that he did not. The court asked the state whether it intended to call any rebuttal witnesses, and the state indicated that it did not. The court then stated: "So, we'll conclude the evidence," and the defendant agreed.

On Tuesday, July 21, 2015, trial resumed. When the court began to review the proposed jury charge with the

defendant and the state, the court-appointed standby counsel for the defendant interjected that he would "like to bring something to the court's attention. When I spoke to [the defendant] this morning, he indicated that he wanted to [open the] evidence because he had new evidence to put on." The defendant explained that he wanted to present evidence to contradict the victim's testimony that "he saw an ambulance and that he had medical attention at the scene." The court then engaged in the following colloquy with the defendant:

"The Court: How do you intend to? You have a witness here?

"[The Defendant]: Yes. Yes. Well, on Friday [July 17, 2015], I, you know—I was able to—I talked to [the] Wallingford Fire Department. Was that okay, or no? And they said, okay, that there's no record that they, [that] there was an ambulance service sent there on August 3, 2011.

"The Court: Okay. But did you subpoena anyone to come to testify?

"[The Defendant]: I just had their voice recording on my voice mail.

"The Court: All right. Here's—

"[The Defendant]: Would you like to hear it?

"The Court: No.

"[The Defendant]: It's from a chief battalion.

"The Court: All right. Can't—

"[The Defendant]: I think it would be great for an appeal.

"The Court: All right. All right. . . .

"The Court: But in terms of an additional witness, who would you call?

"[The Defendant]: The witness is, I have my voice— I have a voice mail from chief battalion of the Wallingford. I mean, this is serious business.

"The Court: All right.

"[The Defendant]: This is my life. . . .

"The Court: But the situation is, the matter was put— the matter's four years old.

"[The Defendant]: Mm-hmm. Yeah.

"The Court: You had ample time—

"[The Defendant]: Yeah, four years of my life.

"The Court: —to subpoena the witness. This is not information that was unknown to you. You were given the opportunity to investigate and subpoena the witnesses at [the] time of trial.

"[The Defendant]: Yes.

"The Court: So, your motion to [open] the evidence is denied."

The defendant continued to argue that he only had "one day" to research this issue because he did not know that the victim asked for or received medical treatment until he testified that an ambulance came to his residence on August 3, 2011. The court acknowledged the defendant's arguments, but it stated that it was still denying the defendant's motion to open the evidence because it believed that the defendant had an adequate opportunity and sufficient resources to obtain this evidence earlier.

"The sixth amendment right to compulsory process includes the right to offer the testimony of witnesses, and to compel their attendance, if necessary, [and] is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so that it may decide where the truth lies." (Internal quotation marks omitted.) *State* v. *Cerreta*, 260 Conn. 251, 260–61, 796 A.2d 1176 (2002). Nevertheless, the decision to open the evidence either to present omitted evidence or to add further testimony after either party has rested is within the sound discretion of the trial court. *State* v. *Carter*, 228 Conn. 412, 420, 636 A.2d 821 (1994); *State* v. *Rodriguez*, 151 Conn. App. 120, 124, 93 A.3d 1186 (2014). In order for a trial court's denial of a motion to open the evidence to constitute a sixth amendment violation, the defendant must show that the evidence was of such importance to the achievement of a just result that the need for admitting it overrides the presumption favoring enforcement of our usual trial procedures. *State* v. *Carter*, supra, 421. That is, "[i]f the motion to [open] is denied, we must, in determining whether the trial court has abused its discretion, look to see if an injustice has occurred by the omission of the evidence." (Internal quotation marks omitted.) Id. "Every reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion." (Internal quotation marks omitted.) *State* v. *Leconte*, 320 Conn. 500, 511, 131 A.3d 1132 (2016).

"In order to determine whether the trial court acted reasonably in denying the defendant's request to open his case, we must first determine whether [the disputed evidence] would have been admissible had the defendant sought to introduce that evidence during the presentation of his case." *State* v. *Carter*, supra, 228 Conn. 422. "The constitutional right to present a defense does not compel the admission of any and all evidence offered in support thereof. . . . The trial court retains the discretion to rule on the admissibility, under the traditional rules of evidence, regarding the defense offered." (Citations omitted; internal quotation marks omitted.) *State* v. *DeJesus*, 260 Conn. 466, 481, 797 A.2d

1101 (2002). We conclude that the court did not violate the defendant's right to present a defense because the evidence that the defendant sought to admit would not have been admissible in his case-in-chief.

As an initial matter, we observe that the defendant argues for the first time on appeal that the evidence he sought to present was *the testimony* of the battalion chief. (Emphasis added.) At trial, the defendant represented that the evidence he sought to admit was *the voice mail message* from the battalion chief. The voice mail message constitutes inadmissible hearsay; Conn. Code Evid. §§ 8-1 and 8-2; and the defendant has not identified an exception to the rule against hearsay that would have permitted its admission into evidence. Even if we were, for the sake of argument, to interpret the defendant's statements about the voice mail as a request by the defendant to open the evidence so that he could call the battalion chief as a witness, we would still conclude that this evidence was inadmissible.

"A witness may be impeached by the introduction of contradictory evidence of other witnesses as long as the evidence is in fact contradictory . . . and that evidence does not relate to collateral matters . . . ." (Citation omitted.) *State* v. *Jose G.*, 290 Conn. 331, 344, 963 A.2d 42 (2009). It is well settled, however, that a court may properly exclude evidence that has only slight relevance due to its tendency to inject a collateral issue into the trial. *State* v. *Annulli*, 309 Conn. 482, 493, 71 A.3d 530 (2013). A matter is collateral if it is "not directly relevant and material to the merits of the case." (Internal quotation marks omitted.) *State* v. *Jose G.*, supra, 344. Stated another way, the extrinsic evidence must be "relevant to a material issue in the case *apart from its tendency to contradict the witness*" to be considered noncollateral and admissible. (Emphasis in original; internal quotation marks omitted.) *State* v. *Annulli*, supra, 493; *State* v. *West*, 274 Conn. 605, 641, 877 A.2d 787, cert. denied, 546 U.S. 1049, 126 S. Ct. 775, 163 L. Ed. 2d 601 (2005); see also *State* v. *Dougherty*, 123 Conn. App. 872, 877, 3 A.3d 208 ("[e]vidence is material where it is offered to prove a fact directly in issue or a fact probative of a matter in issue"), cert. denied, 299 Conn. 901, 10 A.3d 521 (2010); *State* v. *Maner*, 147 Conn. App. 761, 768, 83 A.3d 1182 ("materiality turns upon what is at *issue* in the case, which generally will be determined by the pleadings and the applicable substantive law" [emphasis in original; internal quotation marks omitted]), cert. denied, 311 Conn. 935, 88 A.3d 550 (2014). "This is so even when the evidence involves untruthfulness and could be used to impeach a witness' credibility." *State* v. *Annulli*, supra, 493. Consequently, if the witness' answer to a question on cross-examination relates to a collateral issue in the trial, that testimony is conclusive and cannot be later contradicted through extrinsic evidence. *State* v. *Jose G.*, supra, 344.

In the present case, testimony about whether an ambulance was dispatched to the victim's residence on August 3, 2011, related to a collateral matter and therefore was inadmissible. Although the question of whether an ambulance was dispatched to the victim might be relevant to the question of whether the victim was in fact injured, that was not a material issue in the present case because the defendant did not dispute at trial that the victim was injured. Instead, the defendant disputed the timing and source of the victim's injury. In particular, he argued that the victim's face was injured prior to their altercation and that he was not therefore the cause of that injury. As a result, the only value in this evidence at trial was its tendency to contradict the victim's testimony that an ambulance was dispatched to his residence on August 3, 2011, and, thereby, presumably to impeach his credibility. Indeed, the defendant has consistently and exclusively argued before this court and the trial court that this evidence should have been admitted so that he could contradict the victim's testimony about the ambulance. Under our rules of evidence, this type of impeachment on a collateral matter through extrinsic evidence is not permitted. Accordingly, the defendant has failed to prove that a constitutional violation exists and deprived him of a fair trial as required by the third prong of *Golding*.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Nothing in the record reflects that plea negotiations continued during this period or that any additional offers were made by the state. On December 29, 2011, the state sought to place the case on the firm trial list, but the court denied that request because the defendant was still attempting to retain counsel.

[2] As our Supreme Court previously has observed, "in *Hamilton* v. *Alabama*, [368 U.S. 52, 54, 82 S. Ct. 157, 7 L. Ed. 2d 114 (1961)] the [United States] Supreme Court stated only certain arraignments are a 'critical stage.' In *Hamilton*, the Supreme Court concluded that although an arraignment in Alabama was a 'critical stage,' it acknowledged that whether it was a 'critical stage' in other jurisdictions depended on the role of an arraignment in that particular jurisdiction. Id. It is important to note, however, that, in more recent cases, the Supreme Court has acknowledged that '[c]ritical stages include arraignments, postindictment interrogations, postindictment lineups, and the entry of a guilty plea.' *Missouri* v. *Frye*, [566 U.S. 134, 140, 132 S. Ct. 1399, 182 L. Ed. 2d 379 (2012)]. Therefore, it seems that more recent Supreme Court cases have not limited only certain arraignments to be 'critical stages.'" *Gonzalez* v. *Commissioner of Correction*, 308 Conn. 463, 480, 68 A.3d 624, cert. denied sub nom. *Dzurenda* v. *Gonzalez*,       U.S.     , 134 S. Ct. 639, 187 L. Ed. 2d 445 (2013).

In the present case, the state does not dispute that the defendant's arraignment constituted a critical stage. Accordingly, we assume for the purposes of our analysis that the defendant's arraignment was a critical stage.

[3] We observe that when discussing facts relevant to his first claim on appeal, the defendant did not reference the language from November 29, 2011, that he claimed in his reply brief constituted a clear and unequivocal assertion of the right to counsel. He did reference his statement—"I'll represent myself, Your Honor"—in a footnote when analyzing his claim that the court's February 23, 2012 canvass was constitutionally inadequate. This footnote, however, did not analyze whether the defendant previously had invoked his right to self-representation. Instead, it analyzed whether, and to what extent, the defendant was previously advised of his "right to assigned counsel," i.e., a public defender. In particular, the footnote states: "Judge Scarpellino told defendant [on November 29, 2011] 'you can get a public

defender.' . . . Defendant replied, 'I'll represent myself, Your Honor.' When the court asked him if he had applied for a public defender, defendant replied, 'I get too much unemployment.' . . . On [December 29, 2011], the state told the court that defendant did not want to apply for a public defender." (Citations omitted.)

[4] "Practice Book § 44-3 provides: "A defendant shall be permitted to waive the right to counsel and shall be permitted to represent himself or herself at any stage of the proceedings, either prior to or following the appointment of counsel. A waiver will be accepted only after the judicial authority makes a thorough inquiry and is satisfied that the defendant:

"(1) Has been clearly advised of the right to the assistance of counsel, including the right to the assignment of counsel when so entitled;

"(2) Possesses the intelligence and capacity to appreciate the consequences of the decision to represent oneself;

"(3) Comprehends the nature of the charges and proceedings, the range of permissible punishments, and any additional facts essential to a broad understanding of the case; and

"(4) Has been made aware of the dangers and disadvantages of self-representation." *State* v. *Braswell*, supra, 318 Conn. 828–29 n.4.

[5] "A person is guilty of assault of . . . [a] disabled . . . person . . . in the third degree when such person commits assault in the third degree under section 53a-61 and (1) the victim of such assault . . . [is] physically disabled . . . ." General Statutes § 53a-61a (a) (1).

"A person is guilty of assault in the third degree when: (1) With intent to cause physical injury to another person, he causes such injury to such person or to a third person; or (2) he recklessly causes serious physical injury to another person; or (3) with criminal negligence, he causes physical injury to another person by means of a deadly weapon, a dangerous instrument or an electronic defense weapon." General Statutes § 53a-61 (a).

"A person is guilty of disorderly conduct when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, such person: (1) Engages in fighting or in violent, tumultuous or threatening behavior . . . ." General Statutes § 53a-182 (a) (1).

"A person is guilty of interfering with an emergency call when such person, with the intent of preventing another person from making or completing a 9-1-1 telephone call or a telephone call or radio communication to any law enforcement agency to request police protection or report the commission of a crime, physically or verbally prevents or hinders such other person from making or completing such telephone call or radio communication." General Statutes § 53a-183b (a).

[6] "Under *Golding*, a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Internal quotation marks omitted.) *State* v. *Dixon*, 318 Conn. 495, 511, 122 A.3d 542 (2015); see *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015) (modifying *Golding*'s third condition). "The first two steps in the *Golding* analysis address the reviewability of the claim, while the last two steps involve the merits of the claim." (Internal quotation marks omitted.) *State* v. *Britton*, 283 Conn. 598, 615, 929 A.2d 312 (2007). "The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances." (Internal quotation marks omitted.) *State* v. *Dixon*, supra, 511.