D'AURIA, J.
**560 In this certified appeal, we consider whether the defendant is entitled to a new trial following an allegedly inadequate waiver of the right to counsel. The defendant, *77 Robert Cushard, was charged with crimes stemming from the robbery of an antiques dealer in New Hartford. Several months before his trial, the defendant moved to discharge his appointed public defender and to represent himself. The trial court granted the motion after canvassing the defendant about his decision. About four months later, the trial court canvassed the defendant a second time about whether he wanted to represent himself, and the defendant maintained that he did. After a trial, a jury found him guilty of certain crimes in connection with the robbery, and the trial court rendered judgment consistent with the verdict.
The defendant appealed from the judgment of conviction to the Appellate Court, claiming in part that his initial waiver of the right to counsel was not knowing and voluntary because the first canvass was inadequate and that he was thus deprived of his sixth amendment right to counsel. He argued that a new trial was mandated as a remedy for this alleged sixth amendment violation without the need to show any harm. The Appellate Court agreed that the first canvass was deficient but declined to grant a new trial. State v. Cushard , 164 Conn. App. 832, 840, 137 A.3d 926 (2016). Instead, the Appellate Court concluded that the error in the first canvass was subject to harmless error analysis. Id., at 855, 137 A.3d 926.
**561 According to that court, reversing the judgment was unnecessary because the defendant's lack of counsel before trial was harmless inasmuch as he was canvassed a second time, before trial, and maintained his choice to represent himself; therefore, the defendant had failed to identify any harm flowing from his earlier, inadequate waiver of the right to counsel that rendered his trial fundamentally unfair. Id., at 855-57, 137 A.3d 926.
We do not consider whether the defendant had knowingly and voluntarily waived the right to counsel after the first canvass because we agree with the Appellate Court that any error in the court's acceptance of his waiver of the right to counsel following that canvass was subject to harmless error review and was harmless beyond a reasonable doubt as a result of the second, adequate canvass. We therefore affirm the judgment of the Appellate Court.
The record contains the following facts, which the jury reasonably could have found, and additional procedural history. The robbery at issue occurred on August 2, 2011. The defendant had arranged to sell some items to the victim, an antiques dealer with whom he had previously done business. Shortly after arriving at the dealer's store, the defendant grabbed a wrench that was in the store, hit the dealer over the head, and threatened to stab him with a sharp object (apparently an awl). The defendant demanded money from the dealer, who reached into his pocket and handed the defendant about $600 to $800 in cash, along with his driver's license and credit cards. The defendant took the money and fled the store. The dealer, bleeding and dizzy from the blow to the head, was taken to the hospital for treatment. The attack caused him to permanently lose all hearing in his right ear and partial hearing in his left ear. He also has difficulty with his balance and has lost much of his senses of smell and taste.
**562 Two days after the robbery, on August 4, 2011, the defendant was arrested and charged in connection with the crime. He was arraigned the following day. During the arraignment, the court appointed Christopher Cosgrove, a public defender, to represent the defendant. The state summarized the factual basis for the charges, and the trial court set bond. The defendant *78 was unable to post the bond, so he remained incarcerated.
Several months later, in December, 2011, Cosgrove moved for a competency evaluation of the defendant; see General Statutes § 54-56d ; explaining that his interactions with the defendant led him to question whether the defendant could participate in his own defense. The trial court granted the motion and ordered an evaluation. Following the evaluation results, the court found the defendant incompetent to stand trial but that he was capable of being restored to competency and ordered treatment. In April, 2012, the trial court heard evidence regarding the status of the defendant's competency and treatment. Relying on a follow-up evaluation of the defendant, the court determined that he was competent to stand trial and had simply been unwilling to cooperate in the evaluations and proceedings. The defendant does not challenge on appeal any finding related to his competency.
About five months after being declared competent, the defendant, on his own, filed two motions: a motion to represent himself and a motion for a speedy trial. The defendant attached two letters that Cosgrove had sent to him. Cosgrove's letters recounted that the defendant demanded to go to trial as quickly as possible but had refused to speak with Cosgrove about his case or to cooperate in preparing a defense. The letters also expressed Cosgrove's concern that the defendant's recalcitrance hindered Cosgrove's ability to prepare for trial, and they explained that the defendant could hire **563 a different attorney or represent himself if he did not want to work with Cosgrove.[1]
The trial court canvassed the defendant concerning his motion to represent himself on October 10, 2012 (October, 2012 canvass). When asked about the basis for his motion, the defendant replied that he wanted to go to trial, that Cosgrove did not know the "circumstances of [his] case," that he and Cosgrove had not discussed the case in the past year, and that he did not feel he was "getting a fair shake" and was being "bamboozled." When asked whether he wanted to respond, Cosgrove replied: "I think the motion ... speaks for itself. I can tell you that [the defendant] has expressed this to me on a number of occasions, both in person and in writing." The trial court then questioned the defendant about his preparedness to represent himself, his understanding of the dangers of doing so, and his knowledge that he could keep Cosgrove as his counsel. The court also warned the defendant that he would be expected to question witnesses, know the law that applied to his case, and understand proper courtroom procedure.
*79 The state also described the **564 charges facing the defendant and the maximum punishment for each offense.
At the end of the canvass, the trial court granted the defendant's motion to represent himself. The court concluded, however, that the defendant's speedy trial motion was not ripe because he could not show that the state had failed to prosecute its case with reasonable diligence. The defendant replied that he wanted the trial to begin as soon as possible and did not want to come to court again for any purpose other than jury selection. The court set a new court date of January 8, 2013.
At the January 8, 2013 court date, the court held a hearing on the status of the case. The defendant claimed that he had not received all discovery materials from the state. The prosecutor explained that she had arranged to provide another set of materials to the defendant, but she also represented that the materials had previously been provided to Cosgrove. Cosgrove, who was present at the hearing but not representing the defendant, told the court that he had in turn given the defendant copies of the discovery materials with the contact information of the victim redacted, as required by a protective order. The defendant then explained that he had lost some of the materials when he was previously moved from one jail cell to another.
The parties were back in court on January 17, 2013, in response to a letter the defendant had sent to the prosecutor asking for help in preparing for trial. The defendant explained to the court that he wanted help gathering hospital records because the hospital had told him it would not release any records without a subpoena and suggested that he should contact an attorney to help him with that. The defendant reiterated that he did not want Cosgrove to represent him but asked that Cosgrove help him gather the records from the **565 hospital. The trial court replied that the defendant had elected to represent himself, that it was therefore his responsibility to know the proper procedure for issuing a subpoena, and that Cosgrove would not be appointed to simply track down documents for the defendant. The trial court also expressed a number of concerns about the defendant's decision to represent himself. Among other concerns, the court reminded the defendant that he had no experience in selecting a jury and that the consequences of a conviction could be serious. The court also reiterated to the defendant that presenting a case at a criminal trial was complex, required skill and knowledge of the relevant procedural rules, and that the defendant would be held to the same standard of any attorney presenting a case. The defendant was undeterred by the court's warnings and expressed confidence in his ability to represent himself. Also, during this hearing, the trial court granted a motion by the state to take a biological sample from the defendant for DNA testing.
At a pretrial court appearance a few weeks later, on February 6, 2013, the trial court conducted a second, more thorough canvass concerning the defendant's decision to represent himself (February, 2013 canvass). Throughout the February, 2013 canvass, the defendant reiterated his desire to represent himself despite the court's explanation of his right to have an attorney assist with his defense and the court's repeated warnings about the risks of self-representation. The court found that the defendant had knowingly and voluntarily waived his right to counsel and concluded that the defendant would be allowed to represent himself at trial. The defendant does not claim on appeal that his waiver after the February, 2013 canvass was inadequate.
*80 The defendant represented himself at jury selection the following week and throughout the guilt phase of the trial, which took place the following month in **566 March, 2013. The jury found him guilty of one count each of assault in the first degree and burglary in the first degree, and two counts of robbery in the first degree.[2] The jury found the defendant not guilty of a separate count of burglary in the first degree. The defendant elected to have Cosgrove represent him during the sentencing proceedings. The trial court sentenced the defendant to a total effective sentence of thirty years incarceration followed by ten years of special parole.
On appeal, the Appellate Court affirmed the judgment of conviction. State v. Cushard , supra, 164 Conn. App. at 834-35, 137 A.3d 926. Although the court concluded that the October, 2012 canvass was inadequate, it also concluded that this error was nevertheless subject to harmless error review. Id., at 851-52, 137 A.3d 926. It determined that the defendant had, before his trial, validly waived his right to counsel after the February, 2013 canvass and that the defendant's lack of counsel between the October, 2012 canvass and the February, 2013 canvass was harmless beyond a reasonable doubt. Id., at 856-57, 137 A.3d 926.
We thereafter granted the defendant's petition for certification to appeal from the judgment of the Appellate Court. State v. Cushard , 321 Conn. 926, 138 A.3d 286 (2016).
I
The sixth amendment to the United States constitution guarantees a criminal defendant facing incarceration the right to assistance of counsel for his defense. U.S. Const. amend VI ; see State v. Leconte , 320 Conn. 500, 505 n.2, 131 A.3d 1132 (2016) (sixth amendment applicable to states through due process clause of fourteenth **567 amendment to federal constitution). This right attaches after the initiation of criminal proceedings, such as the filing of the information charging the defendant with one or more crimes, and applies during any "critical stage" of the prosecution. (Internal quotation marks omitted.) Kirby v. Illinois , 406 U.S. 682, 689-90, 92 S.Ct. 1877, 32 L.Ed. 2d 411 (1972).
The defendant also has a corresponding right to decline the assistance of counsel and instead represent himself. Although courts "harbor no illusions that a defendant's decision to waive counsel and [to] proceed [self-represented] generally will lead to anything other than disastrous consequences ... [the] values informing our constitutional structure teach that although [a defendant] may conduct his own defense ultimately to his own detriment, his choice must be honored out of that respect for the individual which is the lifeblood of the law." (Internal quotation marks omitted.) State v. Connor , 292 Conn. 483, 507-508, 973 A.2d 627 (2009) ; see also McKaskle v. Wiggins , 465 U.S. 168, 174, 104 S.Ct. 944, 79 L.Ed. 2d 122 (1984) (right to self-representation recognizes autonomy of accused).
Because the rights to counsel and self-representation cannot be exercised at the same time, a defendant choosing to represent himself necessarily must waive his right to counsel.
*81 Faretta v. California , 422 U.S. 806, 835, 95 S.Ct. 2525, 45 L.Ed. 2d 562 (1975) ; State v. Henderson , 307 Conn. 533, 546, 55 A.3d 291 (2012). Although "a defendant has an absolute right to self-representation, that right is not self-executing." (Internal quotation marks omitted.) State v. Webb , 238 Conn. 389, 429, 680 A.2d 147 (1996). Before a defendant may give up his right to counsel and represent himself, the trial court must be satisfied that his waiver of counsel is knowingly and voluntarily made. Id. ; see also Faretta v. California , supra, at 835, 95 S.Ct. 2525 ; State v. Henderson , supra, at 546, 55 A.3d 291. A waiver is validly made when the record establishes **568 that the defendant is (1) aware of the right to counsel, including appointed counsel if he is indigent, (2) possesses the intellectual capacity to appreciate the consequences of his decision to represent himself, (3) comprehends the nature of the proceedings, the charges against him, and the possible range of punishments, if convicted, and (4) aware of the detriments of declining the help of an attorney. See Practice Book § 44-3 ; see also State v. Connor , supra, 292 Conn. at 509, 973 A.2d 627 (noting that § 44-3 provides means of obtaining waiver of constitutional right to counsel but is not source of substantive rights and so its provisions must be interpreted coextensively with constitutional requirements). Although these requirements are met usually by a canvass of the defendant in open court, "the court may accept a waiver of the right to counsel without specifically questioning a defendant on each of the factors listed in ... § [44-3] if the record is sufficient to establish that the waiver is voluntary and knowing." (Internal quotation marks omitted.) State v. Connor , supra, at 510, 973 A.2d 627. The state bears the burden of demonstrating a valid waiver. Id., at 508, 973 A.2d 627.
In the present case, the defendant claims that he had not validly waived his right to counsel after the October, 2012 canvass for three principal reasons. He claims that the record does not establish that he was aware of (1) his right to retain his own attorney if he did not want Cosgrove to represent him, (2) the nature of the charges against him or the essential factual circumstances underlying those charges, and (3) the mandatory minimum sentences accompanying certain charges. The Appellate Court agreed with the defendant and determined that the first waiver was deficient such that the trial court had abused its discretion by permitting the defendant to represent himself following the October, 2012 canvass. State v. Cushard , supra, 164 Conn. App. at 845-52, 137 A.3d 926. The Appellate Court determined, however, that the trial court's error was reviewable for harmless error **569 and that it was harmless beyond a reasonable doubt. Id., at 852, 137 A.3d 926.
We need not decide whether the defendant's waiver of counsel following the October, 2012 canvass was adequate. Upon reviewing the record, we are instead persuaded that, even if we assume the defendant's waiver following the October, 2012 canvass was inadequate, the Appellate Court properly applied harmless error review and concluded that any error by the trial court in accepting the defendant's waiver after the October, 2012 canvass was harmless beyond a reasonable doubt.
II
Because we assume that the trial court improperly granted the defendant's October, 2012 request to represent himself, we address the proper remedy. Most constitutional violations do not require automatic reversal of a conviction but must instead be reviewed to determine whether they were harmless. Rose v. Clark , 478 U.S. 570, 576-79, 106 S.Ct. 3101, 92 L.Ed. 2d 460 (1986) ;
*82 State v. Ayala , 324 Conn. 571, 590, 153 A.3d 588 (2017). "[T]he [harmless error] doctrine is essential to preserve the principle that the central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence, and promotes public respect for the criminal process by focusing on the underlying fairness of the trial rather than on the virtually inevitable presence of immaterial error." (Internal quotation marks omitted.) Arizona v. Fulminante , 499 U.S. 279, 308, 111 S.Ct. 1246, 113 L.Ed. 2d 302 (1991). To find a constitutional violation harmless, the reviewing court must be convinced "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." Chapman v. California , 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed. 2d 705 (1967).
**570 Some violations, however, so undermine the integrity of the proceedings that they cannot be reviewed for harmlessness. Id., at 23 and n.8, 87 S.Ct. 824 ; State v. Ayala , supra, 324 Conn. at 591, 153 A.3d 588. These so-called structural errors tend to "by their very nature cast so much doubt on the fairness of the trial process that, as a matter of law, they can never be considered harmless." Satterwhite v. Texas , 486 U.S. 249, 256, 108 S.Ct. 1792, 100 L.Ed. 2d 284 (1988). "These are structural defects in the constitution of the trial mechanism, which defy analysis by [harmless error] standards." (Internal quotation marks omitted.) Arizona v. Fulminante , supra, 499 U.S. at 309, 111 S.Ct. 1246. Instead, structural errors require reversal of the defendant's conviction and a new trial. See Satterwhite v. Texas , supra, at 256-57, 108 S.Ct. 1792. Constitutional violations have been found "to be structural, and thus subject to automatic reversal, only in a very limited class of cases." (Internal quotation marks omitted.) Neder v. United States , 527 U.S. 1, 8, 119 S.Ct. 1827, 144 L.Ed. 2d 35 (1999).
Determining whether an error is structural requires a review of the nature of the right at issue and the effect of its denial on the proceeding. An error is generally structural when it affects the "framework within which the trial proceeds"; Arizona v. Fulminante , supra, 499 U.S. at 310, 111 S.Ct. 1246 ; such that "the error always results in fundamental unfairness." Weaver v. Massachusetts , --- U.S. ----, 137 S.Ct. 1899, 1908, 198 L.Ed.2d 420 (2017). In these instances of structural error, "a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment [following such a trial] may be regarded as fundamentally fair." (Internal quotation marks omitted.) Arizona v. Fulminante , supra, at 310, 111 S.Ct. 1246. For instance, the failure to give a reasonable doubt instruction to jurors that comports with constitutional requirements renders the outcome of their deliberations entirely unreliable.
**571 Sullivan v. Louisiana , 508 U.S. 275, 281-82, 113 S.Ct. 2078, 124 L.Ed. 2d 182 (1993).
In addition, an error may be deemed structural when "the effects of the error are simply too hard to measure ...." Weaver v. Massachusetts , supra, 137 S.Ct. at 1908. In these instances, the error so significantly impacts the proceeding that attempting to discern harm would require guesswork about how the trial may have proceeded in the absence of the error. Such a review would be entirely speculative. "Because the [state] will, as a result, find it almost impossible to show that the error was 'harmless beyond a reasonable doubt' ... the efficiency costs of letting the [state] try to make the showing are unjustified." (Citation omitted.) Id. ; see also Satterwhite v. Texas , supra, 486 U.S. at 256, 108 S.Ct. 1792 ("[s]ince the scope of a violation such as a deprivation of the right to conflict-free representation cannot *83 be discerned from the record, any inquiry into its effect on the outcome of the case would be purely speculative"); Holloway v. Arkansas , 435 U.S. 475, 491, 98 S.Ct. 1173, 55 L.Ed. 2d 426 (1978) ("an inquiry into a claim of harmless error ... would require, unlike most cases, unguided speculation"); State v. Lopez , 271 Conn. 724, 738, 859 A.2d 898 (2004) (structural error is "necessarily unquantifiable and indeterminate" [internal quotation marks omitted] ).
In contrast, an error is usually subject to harmless error review when it does not pervade or undermine the fairness of the trial. See Arizona v. Fulminante , supra, 499 U.S. at 307-308, 111 S.Ct. 1246. An error subject to review for harmlessness usually occurs during a distinct portion of the trial, and, thus, "its scope is readily identifiable." Holloway v. Arkansas , supra, 435 U.S. at 490, 98 S.Ct. 1173. "[T]he reviewing court can undertake with some confidence its relatively narrow task of assessing the likelihood that the error materially affected the deliberations of the jury." Id."[I]f the [state] can prove beyond a reasonable **572 doubt that a constitutional error did not contribute to the verdict, the error is harmless and the verdict may stand." Satterwhite v. Texas , supra, 486 U.S. at 256, 108 S.Ct. 1792.
The denial of the right to counsel specifically can constitute structural error if the violation "pervade[s] the entire proceeding ...." Id. For example, denial of counsel for the entirety of the defendant's trial is considered structural error. See id., at 257, 108 S.Ct. 1792 ; Gideon v. Wainwright , 372 U.S. 335, 344-45, 83 S.Ct. 792, 9 L.Ed. 2d 799 (1963) ; see also Holloway v. Arkansas , supra, 435 U.S. at 489-91, 98 S.Ct. 1173 (structural error found when appointed counsel had conflict of interest in representing codefendants throughout entire proceeding).
The denial of counsel only during pretrial proceedings may also rise to the level of structural error if the court or the defendant made decisions affecting the fundamental fairness of the defendant's trial. Thus, for instance, in Hamilton v. Alabama , 368 U.S. 52, 53-55, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961), the United States Supreme Court found the denial of counsel at an arraignment to be structural error when state law provided that defenses not pleaded at arraignment were irrevocably waived and could not be raised at trial. In White v. Maryland , 373 U.S. 59, 60, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963), the Supreme Court also found structural error when a defendant did not have counsel at an arraignment and entered a guilty plea that was later revoked but was, as permitted by state law, used against the defendant at his trial. In these instances, "the deprivation of the right to counsel affected-and contaminated-the entire criminal proceeding." Satterwhite v. Texas , supra, 486 U.S. at 257, 108 S.Ct. 1792.
For most pretrial denial of counsel claims, however, an alleged violation is usually not considered structural and is subject to harmless error review. In those instances, courts may review the record to determine **573 whether anything occurred during the pretrial proceedings that ultimately harmed the defendant at trial. Courts have concluded, for instance, that the lack of counsel at arraignment is generally not a structural error when "the arraignment involved no necessary or inevitable impact on the subsequent criminal proceedings ...." United States v. Owen , 407 F.3d 222, 227 (4th Cir. 2005), cert. denied, 546 U.S. 1098, 126 S.Ct. 1026, 163 L.Ed.2d 867 (2006).
Nor is reversal of a judgment of conviction mandated when counsel is denied during a pretrial hearing in which a victim identifies the defendant as her assailant *84 because the extent of the harm is discrete and discernable from a review of the record. Moore v. Illinois , 434 U.S. 220, 232, 98 S.Ct. 458, 54 L.Ed. 2d 424 (1977). The denial of counsel during a preliminary hearing to determine whether the state had probable cause to hold the defendant for a crime also does not mandate reversal because the court can look at the record to determine whether anything transpired that impacted the outcome of the trial. See Coleman v. Alabama , 399 U.S. 1, 10-11, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970). According to the United States Supreme Court, "the lack of counsel at a preliminary hearing involves less danger to the integrity of the truth-determining process at trial than the omission of counsel at the trial itself or on appeal." (Internal quotation marks omitted.) Adams v. Illinois , 405 U.S. 278, 282-83, 92 S.Ct. 916, 31 L.Ed. 2d 202 (1972).
Following the United States Supreme Court's decision in Coleman , this court applied harmless error review in State v. Brown , 279 Conn. 493, 506-509, 903 A.2d 169 (2006), when the defendant was denied the assistance of counsel for a probable cause hearing. The defendant in Brown failed to retain an attorney by the prescribed date of the probable cause hearing. Id., at 499, 903 A.2d 169. At the hearing, the court asked the defendant whether **574 he wanted to have an attorney appointed to represent him or to proceed without an attorney. Id., at 500, 903 A.2d 169. The defendant agreed to go ahead unrepresented but was not otherwise warned or canvassed concerning his decision to represent himself. Id., at 499, 903 A.2d 169. At the conclusion of the hearing, the trial court found probable cause to prosecute, and the defendant was later convicted after a trial. Id., at 498, 903 A.2d 169.
On appeal to this court, the defendant claimed that allowing him to proceed self-represented violated his sixth amendment right to counsel and required reversal of his conviction, but this court disagreed. Id., at 498-99, 903 A.2d 169. Although we agreed that the trial court's decision to allow the defendant to proceed unrepresented during the hearing violated his right to counsel, we nevertheless concluded that this was "the type of error that properly may be subject to harmless error analysis." Id., at 509, 903 A.2d 169. This court concluded that the error was appropriate for harmless error review because any harm would be "discernible upon appeal"-a reviewing court could look to what transpired at the probable cause hearing and determine whether anything that did or did not occur had some irreparable and harmful impact on the defendant's trial. Id., at 510-11, 903 A.2d 169. According to this court, the record would reveal possible prejudice at trial resulting from the probable cause hearing, "such as inadequate examination or cross-examination of witnesses at the probable cause hearing that resulted in [the] unavailability [of] evidence for use at trial, loss of an opportunity to impeach witnesses at trial, or the hindrance of full preparation or presentation of the defendant's case at trial." Id., at 510, 903 A.2d 169. Looking to the record, this court determined that nothing during the probable cause hearing pervaded the entirety of the proceeding; nor did the hearing impact the trial in some indeterminate manner. Id., at 510-11, 903 A.2d 169. Consequently, we concluded that harmless error review was appropriate and, upon **575 reviewing the record of the probable cause hearing and the trial, found that the lack of counsel was harmless. Id., at 509, 513, 903 A.2d 169.
III
Turning to the present case, the defendant asserts that waiving his right to counsel *85 after an inadequate canvass, under any circumstances, is not amenable to harmless error review and requires automatic reversal of his conviction and a new trial. We disagree. As in Brown , we examine the nature of the claimed constitutional error, which we have assumed for this analysis, to determine whether the error contaminated the fundamental fairness of the entire criminal proceedings and, therefore, is structural, or may properly be reviewed for harmless error. Because we determine initially that nothing transpired in the present case that created some "necessary or inevitable impact" on the fundamental fairness of the criminal trial; United States v. Owen , supra, 407 F.3d at 227 ; we review the record to determine whether the constitutional error contributed to the outcome of the defendant's trial and conclude that the error was harmless beyond a reasonable doubt.
A
As an initial matter, we reject the defendant's threshold argument that reversal is always required any time there is an inadequate waiver of the right to counsel, irrespective of when the defendant was deprived of counsel and whether that deprivation impacted the trial. According to the defendant, "[n]o Connecticut case-before this one-has held that an inadequate canvass of the waiver of counsel was harmless error." He urges us to "reaffirm a bright line rule" that an invalid waiver of the right to counsel is a structural error that must always result in reversal and a new trial for the defendant. We disagree.
**576 The defendant's argument contradicts our decision in Brown , which conducted a harmless error review following an invalid waiver of counsel for a pretrial hearing and concluded that the deprivation of counsel during the probable cause hearing in that case was harmless beyond a reasonable doubt. State v. Brown , supra, 279 Conn. at 511-13, 903 A.2d 169 ; see also Coleman v. Alabama , supra, 399 U.S. at 11, 90 S.Ct. 1999 (remanding case for harmless error determination). The defendant's position fails to distinguish between the total deprivation of counsel at trial and the deprivation of counsel during pretrial proceedings-a distinction that, as we have already explained, is critical. Compare Gideon v. Wainwright , supra, 372 U.S. at 344-45, 83 S.Ct. 792, with Coleman v. Alabama , supra, at 10-11, 90 S.Ct. 1999.
The defendant's argument that his conviction should be automatically reversed does not account for the impact that a subsequent, valid waiver of the right to counsel has on determining whether reversal is required. We agree that reversal is required when a defendant represents himself at trial after an invalid waiver and the trial court does not obtain a subsequent, valid waiver. See, e.g., Gideon v. Wainwright , supra, 372 U.S. at 344, 83 S.Ct. 792. In that instance, the remedy of a new trial is required because a reviewing court cannot determine from the record whether the defendant knowingly and voluntarily proceeded without counsel during his trial. But there is no such ambiguity in the record about a defendant's decision to proceed to trial without counsel when the trial court has conducted a subsequent, intervening canvass and then the defendant validly waives his right to counsel. Reversal is not automatically required under those circumstances, and a reviewing court may instead focus its analysis concerning the proper remedy by determining the impact on the trial of the period during which the defendant had not validly waived his right to counsel. See State v. Webb , supra, 238 Conn. at 431, 680 A.2d 147 (concluding that defendant's **577 first waiver of right to counsel was adequate but noting that "no conceivable harm resulted ... *86 prior to a more searching canvass and the reassertion of his waiver of counsel"); see also People v. Crampe , 17 N.Y.3d 469, 483, 932 N.Y.S.2d 765, 957 N.E.2d 255 (2011) (second canvass of defendant before trial following earlier, inadequate canvass at suppression hearing was sufficient to show "that [the] defendant's decision to defend himself at trial was knowing, voluntary and intelligent" [emphasis in original; internal quotation marks omitted] ).
We are further persuaded that reversal is not always mandated in cases of an inadequate waiver of the right to counsel because of the incongruous relationship between the claimed error and the remedy demanded. Specifically, the defendant's claim of automatic structural error would mean that, under these circumstances, any trial following an inadequate canvass and waiver was doomed for reversal, notwithstanding that such a sanction cannot restore what the defendant claims he lost.
In the present case, the defendant might not have validly waived his right to counsel after the court's October, 2012 canvass, but, after the February, 2013 canvass, he persisted in asserting his right to represent himself and does not claim any error regarding either that later waiver or any other ruling at his trial. According to the defendant, however, the improper acceptance of a waiver after an invalid canvass is an error that may never be cured-either by a later canvass or by retaining counsel-and must result in reversal. Instead, he apparently claims that, in every instance of an inadequate waiver, the only solution would be to proceed with the defendant's trial and then, if it results in a conviction, reverse the judgment on appeal and remand the case for a new trial. The illogic of such a result itself defeats the defendant's argument. Because **578 any trial after an invalid canvass regarding the right to counsel would be destined for reversal on appeal and then a retrial, the defendant's proposed rule would turn the initial trial into a futile exercise. In fact, the defendant's proposed rule would prevent the trial court from ever identifying and remedying its earlier error, even if it recanvasses the defendant just hours after the initial, invalid canvass, leading to a result contrary to our decision in Brown , which applied harmless error review following an inadequate waiver. State v. Brown , supra, 279 Conn. at 509-10, 903 A.2d 169 ; see also State v. Webb , supra, 238 Conn. at 431, 680 A.2d 147 (concluding initial waiver of right to counsel was adequate, but noting that, if waiver was inadequate, there was "no conceivable harm" in "brief period" before second canvass and waiver). We perceive no cogent reason for disturbing our prior case law and adopting a rule mandating such a preordained waste of resources and delay in resolving a case.
We therefore reject the defendant's assertion that reversal is always required in cases of an inadequate waiver of the right to counsel. Rather, to determine if the error in the present case was structural, we must perform an initial review of the record to determine whether the absence of counsel had any impact on the subsequent trial that irretrievably eroded its fundamental fairness. See United States v. Owen , supra, 407 F.3d at 227 ; State v. Brown , supra, 279 Conn. at 509-11, 903 A.2d 169.
B
We therefore focus our initial review on the effect of the lack of counsel during the period in which the defendant had not adequately waived this right-the four months between the trial court's October, 2012 canvass and the February, 2013 canvass-to determine whether the alleged error was structural in this case or may be reviewed for harmlessness. See *87 State v. Brown , supra, 279 Conn. at 509-11, 903 A.2d 169. We conclude that the denial **579 of counsel during this period was not structural error because it did not infect and contaminate the entire criminal proceedings and may therefore be reviewed for harmlessness.
The present case does not fall into the category of sixth amendment violations, discussed previously, requiring reversal because of the total deprivation of counsel during trial. The defendant represented himself without a valid waiver only during the pretrial stage of the criminal proceedings between the October, 2012 canvass and the February, 2013 canvass. Prior to the October, 2012 canvass, the defendant was represented by Cosgrove. During the October, 2012 canvass, the defendant asserted his desire to represent himself, and we have presumed his waiver of the right to counsel following that canvass was not adequate. During the February, 2013 canvass, however, the defendant validly waived his right to counsel. Thus, although the defendant did not have counsel at his trial, that was a result of his own decision following the court's February, 2013 canvass. Although the defendant questions whether his waiver following the February, 2013 canvass can cure any harm from his earlier, invalid waiver, he makes no claim that his second waiver following the February, 2013 canvass was constitutionally inadequate or improperly deprived him of counsel at trial.
Nothing occurred during the period in which the defendant was unrepresented that necessarily rendered his trial a fundamentally unfair or unreliable method for determining guilt. During this period, the trial court held two pretrial hearings. Unlike the defendants in Hamilton and White , however, the defendant in the present case did not make any decisions that infected the entire trial, for example, by irrevocably waiving any defenses or making any irrevocable admissions of guilt. See White v. Maryland , supra, 373 U.S. at 60, 83 S.Ct. 1050 ; Hamilton v. Alabama , supra, 368 U.S. at 55, 82 S.Ct. 157. Nor were any decisions **580 made by the trial court at these hearings that irreversibly impacted or undermined the fundamental fairness of the subsequent trial. Under these circumstances, the inadequate waiver did not amount to structural error. See State v. Brown , supra, 279 Conn. at 509-11, 903 A.2d 169 ; see also United States v. Owen , supra, 407 F.3d at 227. Instead, as in Brown , we may review the record of these hearings and the trial to determine whether anything transpired to harm the defendant and to contribute to the result at trial. Additionally, we may look to the record to determine whether having representation at those hearings might have prevented any harm that arose.
As for the defendant's concerns about the lack of counsel's assistance in preparing for trial generally-locating witnesses, obtaining additional discovery, filing motions, etc.-we are not persuaded that the lack of counsel's assistance for these tasks during the four months at issue inevitably pervaded and contaminated the fairness of "the entire criminal proceeding," such that reversal would be required without a harmless error analysis.[3] Satterwhite v. Texas , supra, 486 U.S. at 257, 108 S.Ct. 1792. Certainly, the defendant might have benefitted from assistance during these four months, but this was not the defendant's *88 only opportunity for trial preparation. He was not required to accomplish his pretrial preparation entirely within this time period. These same activities could have otherwise been accomplished by the defendant, acting on his own or with the help of counsel, either before the defendant relinquished counsel in October, 2012 or after he was properly canvassed in February, 2013. Although the lack of counsel's assistance for trial preparation during these four months **581 might have harmed the defendant's case, it did not do so in a manner that necessarily eroded the fairness of the entire criminal proceedings, including the trial. A review of the record will allow us to determine whether the defendant would have benefitted from having counsel during this period, whether a lack of counsel's assistance to prepare the case deprived the defendant of a meaningful opportunity to prepare his case, and whether this deprivation, or, instead, some intervening circumstance, contributed to the outcome of the trial.
The defendant argues that we should nevertheless deem the error in the present case structural because the harm resulting from the absence of counsel is too speculative for harmless error review. He asserts that counsel's absence "gives rise to myriad, unknowable harms ...." According to the defendant, an attorney representing him during the four months in question "might have filed unfiled motions, found unfound witnesses, obtained unobtained discovery, challenged unchallenged evidence, asked unasked questions, raised unraised defenses, and so on." Consequently, the defendant maintains that the lack of counsel potentially impacted the outcome of the trial in an unknowable way, undermining the fairness of his trial and turning any harmless error analysis into a wholly speculative inquiry.
We disagree, however, that these concerns alone elevate the error in the present case to the level of structural error. To the extent that the defendant speculates that counsel during the relevant time period might have located some evidence or raised arguments that are now irretrievably lost, his proposed remedy of a new trial will not resolve this concern. A new trial would not make irretrievable evidence retrievable once again, and the defendant has made no claim that this error requires a judgment of acquittal. In these circumstances, **582 the remedy the defendant seeks would not alleviate the hypothetical harm he has claimed.
For all these reasons, we conclude that any error in the present case is not structural, requiring reversal without a more detailed analysis of prejudice. As a result, we will proceed to determine whether the state has established that any error was harmless.
C
Applying a harmless error analysis, we, like the Appellate Court, are persuaded "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." Chapman v. California , supra, 386 U.S. at 24, 87 S.Ct. 824 ; see State v. Brown , supra, 279 Conn. at 513, 903 A.2d 169.
We first observe that the extent to which the verdict could be attributed to the defendant's self-representation at trial is not the result of his earlier, invalid waiver. Having been fully warned of the consequences of a conviction, the dangers of self-representation, and the benefits of having counsel, the defendant nevertheless made a knowing and voluntary choice to proceed to trial as his own representative after the February, 2013 canvass. His self-representation at trial, and any harm that *89 flowed from that decision, thus resulted from his own voluntary actions.
We therefore look to whether the lack of counsel between the October, 2012 and February, 2013 canvasses contributed to the verdict against the defendant. We are persuaded that the lack of counsel was harmless beyond a reasonable doubt.
During this period, the trial court held two hearings. At the first hearing, on January 8, 2013, the parties and the court discussed the status of the state's production of discovery. The defendant also moved to recuse the trial judge, and the court denied that motion. A week and one-half later, on January 17, 2013, the trial court held another hearing in response to a letter the defendant **583 had sent to the prosecutor asking for help in obtaining materials from a hospital. The defendant asked that Cosgrove be appointed for the limited purpose of helping him subpoena hospital records. The trial court denied the request. The court explained that the defendant had elected to represent himself, and, as a result, it was his responsibility to learn the proper procedures for obtaining documents rather than using the public defender's office in piecemeal fashion. The trial court also questioned the defendant again about his choice to represent himself and further warned him of the dangers of doing so. The court then granted a request by the state to obtain a DNA sample from the defendant for testing against some of the objects allegedly used during the robbery.
Our review of the record satisfies us that these hearings did not contribute to the verdict. The trial court issued few rulings on motions, and none of those rulings was of significance to the subsequent trial. The trial court denied the defendant's motion to recuse, but there is no contention or indication that the motion otherwise should have been granted or that it might have been granted had counsel been representing the defendant. There is also no indication that the trial court harbored any bias against the defendant during the trial because of the motion. To the contrary, the record reflects that the trial court was concerned with protecting the defendant's rights and discouraged him from representing himself at trial because of the severe disadvantages of doing so.
The trial court also granted a motion to allow the state to collect a DNA sample from the defendant, but the state did not use DNA evidence against the defendant at his trial. The record establishes only that police sent the wrench and the sharp object used in the robbery for DNA testing, but the results were not entered into evidence. In fact, the defendant highlighted the **584 absence of any DNA evidence during his closing argument.
Besides these motions, the hearings also addressed discovery. The state indicated it had already produced discovery to Cosgrove and was reproducing discovery directly to the defendant. There is no indication that the state failed to meet its discovery obligations prior to trial. Nor is there any indication that the timing of discovery hindered the defendant's ability to present his case at trial. Presumably, if needed, the defendant could have requested more preparation time, but he insisted on proceeding to trial as quickly as possible, even after the February, 2013 canvass, during which the court further informed him of his rights and the dangers of presenting his own defense.
The defendant also asked the court to allow Cosgrove to assist him in obtaining records from third parties, and the court denied that request because the defendant had opted to represent himself. Although the defendant could have benefitted from counsel's assistance in subpoenaing documents if he had chosen to be represented *90 by counsel, he nevertheless chose to forgo that assistance when he validly waived his right to counsel after the February, 2013 canvass. Notably, the defendant declined the assistance of counsel after the February, 2013 canvass despite having encountered difficulty in obtaining discovery and being made aware that Cosgrove could not assist him in obtaining evidence unless he opted for representation. Consequently, to the extent the defendant failed to obtain evidence in his favor for use at trial, this was ultimately attributable to his February, 2013 decision to represent himself.
The defendant also argues that, apart from these hearings, counsel could have assisted him during the four months at issue by filing additional motions as well as by conducting additional pretrial investigation and general trial preparation. We disagree that the defendant's **585 lack of counsel to perform these tasks during this period ultimately impacted the outcome of the trial. First, by the time of the October, 2012 canvass, Cosgrove had already filed a number of critical motions on the defendant's behalf, including motions to suppress evidence, for disclosures and discovery, for notice of any uncharged misconduct, and for a bill of particulars. The defendant himself filed an additional motion to suppress certain statements he gave to the police. The defendant has not identified any other motions that might have been filed during this period or areas of investigation he might have pursued if he had counsel during these four months. Second, it is unlikely that counsel would have been of much assistance to the defendant in either filing additional motions or preparing for trial during this period because the defendant previously had refused to cooperate with Cosgrove and expressed a desire to go to trial as quickly as possible, despite Cosgrove's protestations that the defendant's lack of cooperation left him unable to prepare for trial. Third, any motions not filed or investigation not conducted during this four month period could have been performed after the February, 2013 canvass had the defendant elected to have counsel assist him at that point. We emphasize again, however, that any harm resulting from the lack of counsel for trial preparation is attributable to the defendant's intervening decision to continue representing himself, despite being fully warned of the dangers of doing so.
For these reasons, we are convinced beyond a reasonable doubt that the lack of the assistance of counsel between October, 2012 and February, 2013, did not contribute to the verdict against the defendant, even if we assume the absence of counsel during this time resulted from a constitutionally inadequate waiver.
The judgment of the Appellate Court is affirmed.
In this opinion the other justices concurred.

The first letter from Cosgrove was dated in May, 2012, about one month after the defendant had been declared competent to stand trial. In the letter, Cosgrove explained that he understood that the defendant simply wanted to go to trial but that Cosgrove was unwilling to go forward until he could prepare for trial, noting that the defendant had refused to assist him. Cosgrove then advised the defendant: "You can always hire a private attorney, if you can afford one, or you could ask the judge to allow you to represent yourself, if that's what you want. He is not going to appoint you another public defender. I will try to visit you [next week], and you can decide how you want to handle that. There is an awful lot of work that goes into a trial, and we need to talk about it."
The second letter was dated one month later, in June, 2012. In this letter, Cosgrove expressed his understanding that the defendant desired to have a trial date but, again, reiterated that Cosgrove could not proceed to trial until he had prepared the case, which required the defendant's cooperation. Cosgrove then wrote: "You can, of course, ask the judge to let you represent yourself, if you insist on not talking to me, and he might even allow it. In the meantime, please try to work with me."

Specifically, the defendant was convicted of one count each of assault in the first degree in violation of General Statutes § 53a-59 (a) (1) and burglary in the first degree in violation of General Statutes § 53a-101 (a) (2), and two counts of robbery in the first degree in violation of General Statutes § 53a-134 (a) (1) and (3).

For the purposes of addressing the defendant's argument, we assume that the time between the two court hearings, when there were otherwise no court proceedings, constituted one of the "critical stages" of the prosecution, giving rise to the right to the assistance of counsel. (Internal quotation marks omitted.) Maine v. Moulton , 474 U.S. 159, 170, 106 S.Ct. 477, 88 L.Ed. 2d 481 (1985).