******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

STATE OF CONNECTICUT *v.* JOSEPH A.*
(SC 20125)

Robinson, C. J., and Palmer, McDonald, D'Auria,
Mullins, Kahn and Ecker, Js.**

*Syllabus*

Convicted of the crimes of assault of a disabled person in the third degree
and disorderly conduct, the defendant appealed to the Appellate Court,
claiming, inter alia, that the trial court had violated his constitutional
right to counsel when it permitted him to represent himself during the
pretrial stage of the proceedings without obtaining a valid waiver of
that right. The Appellate Court affirmed the defendant's conviction, and
the defendant, on the granting of certification, appealed to this court.
*Held*:

1. The Appellate Court correctly concluded that the trial court had not
abused its discretion in determining that the defendant's waiver of his
right to counsel during the pretrial stage of the proceedings was knowing,
intelligent and voluntary: the trial court did not abuse its discretion in
determining that the defendant understood the nature of the charges
against him, as the court, during its canvass of the defendant, ascertained
that he was literate and had graduated high school, recited each of the
charged offenses and the minimum and maximum penalties associated
with them, and asked the defendant whether he understood the charges
and penalties, to which he replied in the affirmative; moreover, the
defendant could not prevail on his claim that his waiver was constitution-
ally inadequate because the trial court did not make him aware of the
dangers and disadvantages of self-representation, as the court pointedly
questioned the defendant regarding his familiarity with the laws and
rules of procedure for criminal trials, and explained that it would not
be able to advise him if he proceeded as a self-represented party and
that he would be expected to follow all of the rules and procedures
applicable to attorneys, and the defendant acknowledged that he had
the education, experience and skill to represent himself, and insisted
on exercising his right to do so.

2. Contrary to the defendant's claim, the trial court's failure to canvass him
regarding his right to counsel during arraignment and plea negotiations
was not structural error and, therefore, was subject to harmless error
analysis, and any error on the part of the trial court in failing to so
canvass the defendant was harmless beyond a reasonable doubt: there
was no structural error, as the defendant's rejection of the state's plea
offer during negotiations prior to his being canvassed by the court did
not affect the framework within which the trial proceeded, the alleged
error, which occurred during a distinct portion of the proceedings and
was readily identifiable, did not pervade the trial or otherwise affect
the deliberations of the jury, the defendant did not contend that anything
occurred during the approximate five month period between his arraign-
ment and his eventual, proper canvass that was used against him at
trial or that he made any irreversible decisions regarding trial strategies
during these stages of the proceedings, and, because the state was open
to negotiation even after the defendant was properly canvassed, the
defendant's ability to enter into a plea agreement was not irretrievably
lost; moreover, any error was harmless beyond a reasonable doubt, as
the record demonstrated that the defendant had the opportunity to
continue plea negotiations with the state after validly waiving his right
to counsel, and, because the defendant never asked the state if he could
still accept its prior plea offer, his rejection of that offer without the
benefit of counsel or a proper canvass did not contribute to the ver-
dict obtained.

Argued October 18, 2019—officially released July 15, 2020***

*Procedural History*

Substitute information charging the defendant with
the crimes of assault of a disabled person in the third

degree, interfering with an emergency call, and disorderly conduct, brought to the Superior Court in the judicial district of New Haven, geographical area number seven, and tried to the jury before *Klatt, J.*; verdict and judgment of guilty of assault of a disabled person in the third degree and disorderly conduct, from which the defendant appealed to the Appellate Court, *DiPentima, C. J.*, and *Alvord* and *Bear, Js.*, which affirmed the trial court's judgment, and the defendant, on the granting of certification, appealed to this court. *Affirmed.*

*Mary A. Beattie*, assigned counsel, for the appellant (defendant).

*Michele C. Lukban*, senior assistant state's attorney, with whom, on the brief, were *Patrick J. Griffin*, state's attorney, and *James Dinnan*, senior assistant state's attorney, for the appellee (state).

*Opinion*

MULLINS, J. The defendant, Joseph A., appeals from the judgment of the Appellate Court, which affirmed his conviction of one count of assault of a disabled person in the third degree in violation of General Statutes § 53a-61a, and one count of disorderly conduct in violation of General Statutes § 53a-182 (a) (1). In this certified appeal, the defendant claims that the Appellate Court incorrectly concluded that he knowingly, intelligently and voluntarily waived his right to counsel on February 23, 2012, during the pretrial stage of the proceedings. He also argues that the Appellate Court incorrectly concluded that he had waived his claim that he was denied his right to counsel at arraignment and during plea negotiations, prior to February 23, 2012, because he raised that claim for the first time in his reply brief.[1]

We conclude that the trial court's canvass on February 23, 2012, was sufficient and that the defendant knowingly, intelligently and voluntarily waived his right to counsel. We also conclude that, even if we assume arguendo that the defendant had not waived the claim that he was denied his right to counsel at arraignment and during plea negotiations, and that the trial court erred in failing to canvass him, any such error was harmless. Accordingly, we affirm the judgment of the Appellate Court.

The Appellate Court's opinion sets forth the following facts, which the jury reasonably could have found. "The defendant and the victim . . . are brothers. The victim has cerebral palsy. In August, 2011, they shared an apartment in a multifamily house with their mother. At approximately 11:40 a.m. on August 3, 2011, the defendant entered the victim's bedroom and grabbed him. The defendant accused the victim's friend of putting a hole in the windshield of his van when they were setting off fireworks the night before. The defendant slapped and punched the victim in the face and head, and dragged him about the apartment. When the victim grabbed his phone, the defendant took it from him and threw it, causing the battery to fall out. Thereafter, the defendant called the Wallingford Police Department to report that his van had been vandalized, and the victim called the police to report the assault after he located and replaced his phone's battery.

\* \* \*

"Thereafter, the defendant was charged with assault of a disabled person in the third degree, disorderly conduct, and interfering with an emergency call. After a jury trial, at which the defendant represented himself, the defendant was found guilty of assault of a disabled person in the third degree and disorderly conduct. The defendant was found not guilty of interfering with an emergency call. The court sentenced the defendant to

a total effective sentence of one year of imprisonment." *State* v. *Acampora*, 176 Conn. App. 202, 205–206, 169 A.3d 820 (2017).

The defendant appealed from his conviction to the Appellate Court. On appeal, he claimed that the trial court violated his right to counsel under the sixth and fourteenth amendments to the United States constitution when it permitted him to represent himself without obtaining a valid waiver of his right to counsel. Id., 204. Specifically, relevant to this appeal, the defendant asserted that the trial court's canvass on February 23, 2012, was inadequate, and, thus, the trial court abused its discretion in determining that he knowingly, intelligently and voluntarily waived his right to counsel on that date. Id., 206. The defendant also claimed that the trial court violated his right to counsel when it allowed him to represent himself at the pretrial stages of arraignment and plea negotiation without obtaining a valid waiver of his right to counsel. Id.

The Appellate Court disagreed, concluding that the trial court's canvass on February 23, 2012, was constitutionally sufficient. Id. The Appellate Court also concluded that the defendant waived his claim that the trial court had violated his right to counsel when it allowed him to represent himself at the pretrial stages of arraignment and plea negotiation because he had not alleged in his opening brief that he clearly and unequivocally invoked his right to counsel prior to February 23, 2012. Id., 214–16. This appeal followed.[2]

I

The defendant claims that the Appellate Court incorrectly concluded that the trial court sufficiently canvassed him on February 23, 2012, and that he knowingly, intelligently and voluntarily waived his right to counsel at that time. Specifically, he asserts that the trial court's canvass on February 23, 2012, was inadequate because the trial court failed to properly explain (1) the charges that he was facing, and (2) the dangers and disadvantages of self-representation. We disagree.

The following additional facts and procedural history are relevant to the defendant's claim. "On February 23, 2012, the court, *McNamara, J.*, canvassed the defendant concerning his waiver of his right to counsel and invocation of his right to self-representation. In relevant part, the court engaged in [a] colloquy with the defendant concerning the charges pending against him . . . ."[3] Id., 216–17. "After completing its canvass, the court found, inter alia, that the defendant knowingly, intelligently, and voluntarily waived his right to counsel." Id., 221.

It is well established that "[w]e review the trial court's determination with respect to whether the defendant knowingly and voluntarily elected to proceed pro se for abuse of discretion." (Internal quotation marks omit-

ted.) *State* v. *Collins*, 299 Conn. 567, 610, 10 A.3d 1005, cert. denied, 565 U.S. 908, 132 S. Ct. 314, 181 L. Ed. 2d 193 (2011).

"The right to counsel and the right to self-representation present mutually exclusive alternatives. A criminal defendant has a constitutionally protected interest in each, but [because] the two rights cannot be exercised simultaneously, a defendant must choose between them. When the right to have competent counsel ceases as the result of a sufficient waiver, the right of self-representation begins. . . . Put another way, a defendant properly exercises his right to self-representation by knowingly and intelligently waiving his right to representation by counsel." (Internal quotation marks omitted.) *State* v. *Henderson*, 307 Conn. 533, 546, 55 A.3d 291 (2012).

"[A] defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation . . . . Rather, a record that affirmatively shows that [he] was literate, competent, and understanding, and that he was voluntarily exercising his informed free will sufficiently supports a waiver. . . . The nature of the inquiry that must be conducted to substantiate an effective waiver has been explicitly articulated in decisions by various federal courts of appeals." (Internal quotation marks omitted.) Id., 546–47.

"Practice Book § [44-3] was adopted in order to implement the right of a defendant in a criminal case to act as his own attorney . . . . Before a trial court may accept a defendant's waiver of counsel, it must conduct an inquiry in accordance with § [44-3], in order to satisfy itself that the defendant's decision to waive counsel is knowingly and intelligently made. . . . Because the § [44-3] inquiry simultaneously triggers the constitutional right of a defendant to represent himself and enables the waiver of the constitutional right of a defendant to counsel, the provisions of § [44-3] cannot be construed to require anything more than is constitutionally mandated." (Internal quotation marks omitted.) Id., 546.

"The multifactor analysis of [Practice Book § 44-3], therefore, is designed to assist the court in answering two fundamental questions: first, whether a criminal defendant is minimally competent to make the decision to waive counsel, and second, whether the defendant actually made that decision in a knowing, voluntary and intelligent fashion. . . . As the United States Supreme Court [has] recognized, these two questions are separate, with the former logically antecedent to the latter. . . . Inasmuch as the defendant's competence is uncontested, we proceed to whether the trial court abused its discretion in concluding that the defendant made the waiver decision in a knowing, voluntary, and intelligent fashion." (Internal quotation marks omitted.) Id., 547.

In the present case, the defendant appealed to the Appellate Court, claiming that "the court's canvass on February 23, 2012, was constitutionally inadequate because the court failed to explain to him in sufficient detail the nature of the charges and to advise him of specific dangers and disadvantages of self-representation." *State* v. *Acampora*, supra, 176 Conn. App. 216. In a well reasoned opinion, the Appellate Court rejected the defendant's claim. Id. First, the Appellate Court concluded that, "[o]n the basis of this record, the court reasonably could have concluded that the defendant was literate, competent, that he possessed sufficient understanding of the duties of self-representation, and that he was voluntarily exercising his informed free will by waiving his right to counsel and invoking his right to self-representation." Id., 224.

Second, the Appellate Court rejected the defendant's claim that his waiver of his right to counsel was constitutionally inadequate because the trial court did not engage in a "comprehensive discussion" with him concerning the elements of each pending charge. (Internal quotation marks omitted.) Id. Instead, the Appellate Court concluded that a discussion of each element of the pending charges was not necessary and that the trial court did not abuse its discretion in concluding "that the defendant understood the nature of the charges pending against him sufficiently to render his waiver of the right to counsel knowing and intelligent." Id., 226. We detect no error in the Appellate Court's reasoning or conclusion.

As this court has previously explained, it is not required "that a defendant must be specifically informed of the particular elements of the crimes charged before being permitted to waive counsel and proceed pro se. . . . [P]erfect comprehension of each element of a criminal charge does not appear to be necessary to a finding of a knowing and intelligent waiver. . . . A discussion of the elements of the charged crimes would be helpful, and may be one of the factors involved in the ultimate determination of whether the defendant understands the nature of the charges against him. A description of the elements of the crime is not, however, a sine qua non of the defendant's constitutional rights in this context. Indeed, in our cases, we have approved of a defendant's assertion of the right to proceed pro se in a case in which the record did not affirmatively disclose that the trial court explained the specific elements of the crimes charged to the defendant as long as the defendant understood the nature of the crimes charged." (Internal quotation marks omitted.) *State* v. *Collins*, supra, 299 Conn. 611–12.

Here, the defendant was charged with one count of assault of a disabled person in the third degree and one count of disorderly conduct. He was undoubtedly aware

that the facts involved in each of the charges stemmed from the alleged assault of his brother. And, as the Appellate Court reasoned, "[t]he elements of each of those charges are relatively straightforward and align with the statutory names of the offenses." *State* v. *Acampora*, supra, 176 Conn. App. 225.

Additionally, in its canvass, the trial court ascertained that the defendant was literate and had graduated high school. The court also recited each of the charged offenses and the minimum and maximum penalties associated with them. When the court asked if the defendant understood the charges and their penalties, the defendant replied, "Yes, I do, Your Honor." Accordingly, we cannot conclude that the trial court abused its discretion in determining that the defendant understood the nature of the charges against him.

The defendant fares no better with respect to his contention that the waiver of his right to counsel was constitutionally inadequate because the court did not make him aware of the dangers and disadvantages of self-representation. The court pointedly questioned the defendant regarding his familiarity with the laws and rules of procedure regarding evidence, pretrial motions, voir dire and discovery for criminal trials, including whether he had any experience with criminal trials. When the defendant replied that he was not familiar with these rules and had no such experience, the court explained to the defendant that, if he represented himself, the court would not be able to advise him on procedures and other issues in the case. The court further explained that, despite his lack of knowledge, the defendant still would be expected to follow all of the rules and procedures applicable to attorneys in the courtroom. Notwithstanding being advised of these serious disadvantages, the defendant insisted on exercising his right to represent himself. Furthermore, in response to the court's questioning, he acknowledged that he had the education, experience and skill to do so, and had access to a library.

On the basis of the foregoing, the record affirmatively reflects that the defendant was literate, competent and understood that he was voluntarily exercising his free will to waive counsel and to represent himself. Thus, we conclude that the trial court did not abuse its discretion in determining that the defendant's waiver of his right to counsel was knowing, intelligent and voluntary.

The defendant relies on several cases from this court and the Appellate Court, claiming that he should have been warned of the specific dangers of self-representation. See, e.g., *State* v. *Collins*, supra, 299 Conn. 567; *State* v. *Fowler*, 102 Conn. App. 154, 926 A.2d 672, cert. denied, 284 Conn. 922, 933 A.2d 725 (2007). Although the canvasses in those cases included specific warnings of the dangers of self-representation—a practice that we encourage—and were deemed constitutionally ade-

quate; see *State* v. *Collins*, supra, 608–10, 612–13; *State* v. *Fowler*, supra, 163–64 and n.7; the fact that the canvass the defendant received in the present case was different from the canvasses in those cases is not dispositive. As the Appellate Court explained, "[t]he defendant . . . does not possess a constitutional right to a specifically formulated canvass . . . . His constitutional right is not violated as long as the court's canvass, whatever its form, is sufficient to establish that the defendant's waiver was voluntary and knowing." (Internal quotation marks omitted.) *State* v. *Acampora*, supra, 176 Conn. App. 227, quoting *State* v. *Diaz*, 274 Conn. 818, 831, 878 A.2d 1078 (2005).

The court's canvass was sufficient to make the defendant aware of the dangers of self-representation; nothing more was constitutionally mandated. As noted previously, after the defendant admitted that he was unfamiliar with the terrain of criminal law and had never tried a criminal case, the court explained that, if he represented himself, the court would not be able to advise him on procedure and other issues in the case. The court also explained that he also would be expected to follow all the rules attorneys follow and would not be able to receive assistance from an attorney while he was trying the case as a self-represented party.[4] Accordingly, the Appellate Court correctly concluded that the trial court had not abused its discretion in determining that the defendant's waiver was knowing, intelligent and voluntary.

## II

The defendant next asserts that the Appellate Court improperly declined to review his claim that he clearly and unequivocally invoked his right to represent himself prior to February 23, 2012, and that the trial court violated his right to counsel by not canvassing him prior to that date. Having reviewed the briefs filed in the Appellate Court, we conclude that the defendant's claim in his opening brief to that court that his right to counsel was violated by the trial court's failure to canvass him prior to arraignment and engaging in plea negotiations, arguably included the claim that he had clearly and unequivocally invoked his right to represent himself prior to February 23, 2012. Accordingly, we will review the defendant's claim that the trial court improperly failed to canvass him regarding his right to counsel during arraignment and plea negotiations, prior to February 23, 2012.

The following additional facts and procedural history set forth in the Appellate Court opinion are relevant to this claim. "On September 14, 2011, the defendant appeared for arraignment unrepresented by counsel. Because the case involved allegations of domestic violence, a discussion was held concerning whether family services, part of the Court Support Services Division, was going to be involved in the case, whether a protec-

tive order needed to be put in place, and what the conditions of that order should be because the defendant and the victim lived together. The defendant declined the assistance of family services, and the court, *Scarpellino, J.*, ultimately agreed to permit the defendant to return to the apartment that he shared with the victim. The court continued the matter for one week so that family services could contact the victim and obtain more information. The following week, on September 21, 2011, family services indicated that it had still been unable to contact the victim, and the court granted another continuance.

"Between September 28, 2011, and November 29, 2011, the defendant requested and received four continuances so that he could retain counsel. At the hearing on November 29, 2011, the following colloquy occurred:

"[The Prosecutor]: [The defendant] is asking for a continuance to hire an attorney.

"[The Defendant]: Still going.

"The Court: One week.

"[The Defendant]: One week.

"The Court: Well, how many times do you want me to continue? You know—

"[The Defendant]: —well, listen, I'm not the one pursuing the case. You guys are coming after me, so—

"The Court: Yeah, well—

"[The Defendant]: —I mean—

"The Court: —you can get a public defender—

"[The Defendant]: —I don't—I'll represent myself, Your Honor.

"The Court: Did you apply for a public defender?

"[The Defendant]: I, I got too much unemployment. I get just enough not to get it, and—

"The Court: All right. What was the offer on this?

"[The Prosecutor]: There hasn't been one because he wanted to retain the services of counsel.

"The Court: Once you tell the prosecutor you want a lawyer, the prosecutor is going to—

"[The Defendant]: Well, no. I did not tell him that.

"The Court: All right.

"[The Defendant]: They told me to get a lawyer, Your Honor. So—

"The Court: All right, well, because, so, so, then give him—send it back and then give him an offer." (Internal quotation marks omitted.) *State* v. *Acampora*, supra, 176 Conn. App. 206–208.

"Thereafter, the defendant interjected that the case

was 'ridiculous . . . .' The court explained to the defendant that 'the charge that's there . . . carries a mandatory year in jail. You, you need to get an attorney . . . .' The defendant proceeded to argue about why the case was 'based on a bunch of crap' and stated: 'And now, you—I, I . . . if you want a big trial thing about it, then I'd rather represent myself, and I'll do my own investigation. . . . Because, honestly, from what I see of attorneys, I believe I can do a better job myself.' The court said, '[a]ll right,' and the defendant asked, '[s]o, we'll give it one week again?' The court instructed the defendant to talk to the prosecutor about his case first. When the defendant's case was recalled, the prosecutor indicated that he was unable to have a 'cogent conversation' with the defendant and stated that the defendant 'really needs an attorney to help him out.' The court therefore granted the defendant's motion for a continuance.

"On December 13, 2011, after the defendant's case was called, the prosecutor noted that '[t]his is a matter that's been continued since September 14 [2011], at the request of the defendant each time to hire counsel. The state's made an offer.' The court asked the defendant how his efforts to retain counsel were proceeding. The defendant responded: 'Saving up [for an attorney]. I got, like, $500 saved, and the lowest I got they want is, like, $800. So, I'm unemployed. So, I've been unemployed. So, plus, I pay my rent. I mean, I only get so much from unemployment.' The court agreed to continue the case so that the defendant could continue his efforts to retain counsel. Between December 29, 2011, and February 16, 2012, the court continued the case five additional times so that the defendant could retain counsel.

"On February 23, 2012, the [prosecutor] explained to the court, *McNamara, J.*, that the defendant's case had been continued several times so that the defendant could retain counsel. The court asked the defendant whether he had in fact retained an attorney. The defendant replied: 'No. Um, well, I'm on unemployment. The person was my brother. I called the police. I don't believe I need a lawyer. I don't want a lawyer. I don't have the money to afford a lawyer.' When the court mentioned Judge Scarpellino, the defendant interjected: 'I asked him to go on the jury trial.' The court asked the defendant whether he had asked for more time to retain an attorney, and the defendant indicated that he had. The defendant explained that he had been saving money over the last several weeks for an attorney, and he stated that, 'if I need to represent myself, I will, Your Honor, I will. . . . I don't believe I really need to . . . sacrifice . . . not paying my rent to hire an attorney for . . . for a junk case.'

"The court engaged in a discussion with the defendant concerning his attempts to retain counsel. The defendant stated: 'They offered me forty-five days,

which I will not accept. So, the next move would have to be trial. So, if we can start picking and maybe I'll have to—if I lose trial, I'll . . . maybe I'll . . . I'll save my money for the appeal.' The court asked the [prosecutor] whether an offer had been made, and the [prosecutor] responded that one had been made in December, 2011. The defendant confirmed that he was rejecting that offer. The court stated that it would place the case on the firm trial list and canvassed the defendant concerning his waiver of the right to counsel and invocation of his right to self-representation. After completing its canvass, the court found, inter alia, that the defendant knowingly, intelligently and voluntarily waived his right to counsel." (Footnote omitted.) Id., 208–10.

The defendant asserts that the trial court's failure to canvass him regarding his right to counsel during the critical stage of plea negotiations is a structural error and, therefore, is not subject to harmless error analysis. We conclude that, under the facts of this case, the trial court's failure to canvass the defendant during arraignment and plea negotiations did not constitute structural error and, therefore, is subject to harmless error analysis.

"Most constitutional violations do not require automatic reversal of a conviction but must instead be reviewed to determine whether they were harmless. . . . [T]he [harmless error] doctrine is essential to preserve the principle that the central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence, and promotes public respect for the criminal process by focusing on the underlying fairness of the trial rather than on the virtually inevitable presence of immaterial error. . . . To find a constitutional violation harmless, the reviewing court must be convinced beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." (Citations omitted; internal quotation marks omitted.) *State* v. *Cushard*, 328 Conn. 558, 569, 181 A.3d 74 (2018).

"Some violations, however, so undermine the integrity of the proceedings that they cannot be reviewed for harmlessness. . . . These so-called structural errors tend to by their very nature cast so much doubt on the fairness of the trial process that, as a matter of law, they can never be considered harmless. . . . These are structural defects in the constitution of the trial mechanism, which defy analysis by [harmless error] standards. . . . Instead, structural errors require reversal of the defendant's conviction and a new trial. . . . Constitutional violations have been found to be structural, and thus subject to automatic reversal, only in a very limited class of cases." (Citations omitted; internal quotation marks omitted.) Id., 570.

"Determining whether an error is structural requires a review of the nature of the right at issue and the effect of its denial on the proceeding. An error is generally structural when it affects the framework within which

the trial proceeds . . . such that the error always results in fundamental unfairness." (Citation omitted; internal quotation marks omitted.) Id. "In addition, an error may be deemed structural when the effects of the error are simply too hard to measure . . . ." (Internal quotation marks omitted.) Id., 571.

"In contrast, an error is usually subject to harmless error review when it does not pervade or undermine the fairness of the trial. . . . An error subject to review for harmlessness usually occurs during a distinct portion of the trial, and, thus, its scope is readily identifiable." (Citation omitted; internal quotation marks omitted.) Id. As this court and the United States Supreme Court have recognized, the lack of counsel at a preliminary hearing involves less danger to the integrity of the truth seeking process of trial than the lack of counsel at the trial itself. See id., 573; see also *Adams* v. *Illinois*, 405 U.S. 278, 282–83, 92 S. Ct. 916, 31 L. Ed. 2d 202 (1972).

This court recently explained that "[t]he denial of counsel only during pretrial proceedings may . . . rise to the level of structural error if the court or the defendant made decisions affecting the fundamental fairness of the defendant's trial." *State* v. *Cushard*, supra, 328 Conn. 572. "For most pretrial denial of counsel claims, however, an alleged violation is usually not considered structural and is subject to harmless error review. In those instances, courts may review the record to determine whether anything occurred during the pretrial proceedings that ultimately harmed the defendant at trial." Id., 572–73. We have explained that the denial of counsel at pretrial proceedings is not structural error when "the extent of the harm is discrete and discernable from a review of the record . . . because the court can look at the record to determine whether anything transpired that impacted the outcome of the trial." (Citation omitted.) Id., 573.

The defendant asserts that the failure of the trial court to canvass him at the plea negotiation stage of the proceedings irretrievably eroded the fundamental fairness of the trial. Specifically, the defendant asserts that the fundamental fairness of the trial was eroded because he rejected the state's plea offer without knowing all of the consequences of that offer, including the mandatory minimum sentence for the charge of one year in jail. Furthermore, the defendant asserts that there is no way to determine what the defendant would have done if he had been given a proper canvass prior to engaging in plea negotiations with the state. We disagree.

Even if we assume for purposes of this appeal that the trial court improperly failed to canvass the defendant regarding his right to self-representation prior to his engagement in plea negotiations with the state, we cannot conclude that such an error irretrievably eroded

the fundamental fairness of the trial. The defendant's decision to reject the plea offer prior to beginning the trial in this matter did not affect the framework within which the trial proceeded. Indeed, the defendant does not point to, and we do not find, any aspect of the trial proceeding that was impacted by the defendant's self-representation during the initial plea negotiation with the state.

The defendant's only claim is that if he had been properly canvassed prior to engaging in plea negotiations with the state, he would not have rejected the plea offer and proceeded to trial. Even if this were true,[5] this alleged error did not pervade the trial or otherwise affect the deliberations of the jury. Instead, the scope of the error alleged by the defendant occurred during a distinct portion of the proceedings, prior to trial, and "its scope is readily identifiable." (Internal quotation marks omitted.) Id., 571, quoting *Holloway* v. *Arkansas*, 435 U.S. 475, 490, 98 S. Ct. 1173, 55 L. Ed. 2d 426 (1978).

Our recent decision in *Cushard* is instructive regarding when an error is structural. See *State* v. *Cushard*, supra, 328 Conn. 572–73. In *Cushard*, we rejected a claim of structural error when a defendant was improperly denied the right to counsel during a portion of the pretrial stage of the case. See id., 578–82. In that case, there was a failure to adequately canvass the defendant prior to the probable cause hearing, but, subsequently, there was a valid canvass prior to trial. Id., 579. In deciding whether the error was structural, this court examined the four month period between the failure to adequately canvass and the proper canvass to determine whether anything occurred during that time period that infected and contaminated the entire criminal proceeding. Id. Because we did not find that anything occurred during that four month period that impacted the trial, and because there was a proper canvass before trial, we concluded that the error was not structural. Id., 579–82.

Similarly, in the present case, there was a period of approximately five months between the defendant's arraignment in September, 2011, and the court's proper canvass on February 23, 2012. The defendant does not contend that anything that occurred during this five month period was used against him later at trial, including statements that he might have made to the prosecutor during the pretrial process, or that he made any irreversible decisions regarding trial strategy during those stages of the proceedings.[6] The defendant focuses on the fact that he rejected an offer for a plea agreement of forty-five days of incarceration without the benefit of counsel and prior to being canvassed in February, 2012. Contrary to the defendant's contentions, deprivation of counsel at the pretrial stages does not automatically result in structural error. Instead, *Cushard* makes clear that such a deprivation is not structural when

that deprivation occurs during a distinct portion of the pretrial proceedings, is readily identifiable, and when no decision was made during the relevant time period that had an effect on the subsequent trial. See id., 572–73. That is precisely the case we have here.

A review of the record in the present case reflects that, although the defendant rejected the state's plea offer one time, the state was open to negotiation even after he was properly canvassed. Therefore, the defendant's ability to enter into a plea agreement was not irretrievably lost by rejecting the plea agreement prior to being canvassed. Accordingly, we cannot conclude that, even if there was a failure to canvass the defendant at arraignment and plea negotiations, such failure amounted to structural error. Therefore, we must determine whether the state has established that any error was harmless.

"With respect to harmless error analysis, we have observed that, [i]f the claim is of constitutional magnitude, the state has the burden of proving the constitutional error was harmless beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Leconte*, 320 Conn. 500, 506, 131 A.3d 1132 (2016). In order to conclude that the presumed error is harmless, we must be "persuaded 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.' " *State* v. *Cushard*, supra, 328 Conn. 582, quoting *Chapman* v. *California*, 386 U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967); see also *State* v. *Brown*, 279 Conn. 493, 513, 903 A.2d 169 (2006).

Applying this standard, we conclude that any presumed error was harmless beyond a reasonable doubt. The defendant asserts that he was harmed by rejecting the state's offer of forty-five days of incarceration because he received a longer sentence after trial. Specifically, he claims that he rejected the forty-five day plea offer without understanding the consequences of that decision because he did not have counsel and had not been properly canvassed regarding that decision prior to rejecting the offer. We disagree.

As this court explained in *State* v. *Cushard*, supra, 328 Conn. 558, "the extent to which the verdict could be attributed to the defendant's self-representation at trial is not the result of his earlier, invalid waiver. Having been fully warned of the consequences of a conviction, the dangers of self-representation, and the benefits of having counsel, the defendant nevertheless made a knowing and voluntary choice to proceed to trial as his own representative . . . ." Id., 582. In the present case, the defendant validly waived his right to counsel in February, 2012, at which time he was specifically advised that a conviction carried a mandatory one year sentence. Therefore, "any harm that flowed from that decision . . . thus resulted from his own voluntary actions." Id.

Our harmless error analysis in this case must focus specifically on whether the defendant's rejection of the plea without the benefit of counsel or a canvass in the period between September, 2011, and February, 2012, had any impact on his trial. The defendant does not point to any specific aspect of his trial that was impacted by his rejection of the forty-five day offer but instead asserts, in conclusory fashion, that his rejection of the forty-five day offer without the benefit of counsel or a valid canvass impacted his trial because the sentence that he received after trial was longer than the sentence he would have received under the forty-five day offer he rejected. We believe that it is obvious on this record that the defendant's decision to reject the forty-five day offer without the benefit of counsel or a valid canvass did not contribute to the trial outcome. See id. (applying harmless error analysis requires determination of whether we are persuaded "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained" (internal quotation marks omitted)).

The record reveals that the defendant was given a plea offer by the state in December, 2011. Thereafter, the defendant returned to court almost every week and requested continuances of the trial on the basis that he was attempting to hire an attorney. When the defendant returned to court on February 23, 2012, he informed the court that the state "offered me forty-five days, which I will not accept." The prosecutor confirmed that the state had made the defendant an offer. The trial court then asked the defendant: "Are you accepting the state's offer, sir?" The defendant responded, "[n]o, Your Honor." The trial court then said: "All right. The offer is rejected." Thereafter, the trial court proceeded to canvass the defendant and determined that his waiver of his right to counsel was knowing, intelligent and voluntary.

There is nothing in the record to demonstrate that, after the valid waiver of his right to counsel on February 23, 2012, the defendant ever asked the state if he could still accept the offer of forty-five days of incarceration. On April 22, 2015, approximately three years after he was canvassed and waived his right to counsel, the state still seemed open to the defendant's accepting the offer. Indeed, the prosecutor represented the following to the court: "My understanding is that [the defendant] was given an offer. He does not wish to do so, and he wishes to have his matter go on the trial list." The defendant made clear that he would not accept any offer from the state except a nolle prosequi. The prosecutor responded that the state was not offering a nolle, but the prosecutor did not represent that the state was not willing to consider other plea agreements. Thus, although the state was not willing to enter a nolle, the defendant never asked to accept the forty-five day offer,

and the state never rejected such a request. Indeed, the defendant expounded simply that he was "not pleading guilty to something [he] didn't do."

This record demonstrates that, even after receiving a proper canvass and validly waiving his right to counsel, the defendant was not willing to accept a plea agreement with the state that involved his pleading guilty to the charges. At no point after December, 2011, did the defendant request to accept the previously offered forty-five day sentence. In addition, neither the state nor the court stated that the offer was not only rejected but also off the table and unavailable. Because the record demonstrates that the defendant had the opportunity to continue plea negotiations with the state after validly waiving his right to counsel, and because he never requested to accept the forty-five day plea offer, we conclude that his rejection of the forty-five day offer without the benefit of counsel or a proper canvass did not contribute to the verdict obtained.

Therefore, even if we assume, without deciding, that the defendant's right to counsel was violated by engaging in plea negotiations with the state, prior to February 23, 2012, without a proper canvass and waiver of the right to counsel, the record is devoid of any indication that the defendant was harmed by the presumed constitutional violation. Accordingly, we conclude that the trial court's failure to canvass the defendant at the plea negotiation stage, prior to February 23, 2012, was harmless beyond a reasonable doubt. See, e.g., *State* v. *Cushard*, supra, 328 Conn. 582; see also *State* v. *Brown*, supra, 279 Conn. 513 ("[b]ecause the record is devoid of any indication that the defendant was harmed by the constitutional violation, we conclude that the deprivation of counsel at the probable cause hearing was harmless beyond a reasonable doubt").

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

* In accordance with federal law; see 18 U.S.C. § 2265 (d) (3) (2018); we decline to identify any party protected or sought to be protected under a protective order or a restraining order that was issued or applied for, or others through whom that party's identity may be ascertained.

** The listing of justices reflects their seniority status on this court as of the date of oral argument.

This case originally was scheduled to be argued before a panel of this court consisting of Chief Justice Robinson, and Justices Palmer, McDonald, D'Auria, Mullins, Kahn and Ecker. Although Justice Mullins was not present when the case was argued before the court, he has read the briefs and appendices, and listened to a recording of oral argument prior to participating in this decision.

*** July 15, 2020, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] We granted the defendant's petition for certification to appeal, limited to the following issues: (1) "Did the Appellate Court properly determine that the defendant waived the issue of whether the trial court was required to canvass him regarding his right to self-representation prior to February 23, 2012?" (2) "If the answer to the first question is no, did the trial court improperly fail to canvass the defendant regarding his right to self-representation prior to February 23, 2012?" And (3) "[d]id the Appellate Court properly conclude that the trial court's February 23, 2012 canvass was sufficient

and that the defendant effectively waived his right to counsel?" *State* v. *Acampora*, 329 Conn. 903, 903–904, 184 A.3d 1215 (2018).

Because our resolution of the sufficiency of the February 23, 2012 canvass impacts our analysis of whether the trial court's alleged failure to properly canvass the defendant prior to February 23, 2012, was structural, thereby affecting the entire framework of the trial, or was an error limited to a distinct, identifiable portion of the trial and, thus, subject to harmless error analysis, we address the third certified question first.

[2] See footnote 1 of this opinion.

[3] "The Court: All right. Do you understand the charges that you are facing, sir?

"[The Defendant]: Yes, I do.

"The Court: You are facing the charge of assault in the third degree—is it a victim over sixty—of a victim over sixty?

"[The Prosecutor]: It's on a disabled person. Correct.

"The Court: A disabled person.

"[The Prosecutor]: Correct.

"The Court: Interfering with an emergency call and disorderly conduct. Do you understand that?

"[The Defendant]: Yes, I do.

"The Court: Do you understand the minimum and maximum penalties of these charges?

"[The Defendant]: Do I understand the minimum—

"The Court: —and maximum penalties in these charges.

"[The Defendant]: What are they? I don't think they were told to me.

"The Court: All right. For the assault on a person, disabled person—

"[The Prosecutor]: It's a one year minimum, one year maximum.

"The Court: —is a one year minimum, mandatory minimum, which means that if you were convicted you would do a minimum time of one year in jail for that charge alone. All right. For the charge of interfering with an emergency call, you would—that would be a [class] C mis—let me see—that would be a [class] A misdemeanor. You can get another year in jail, plus a $2000 fine. And disorderly conduct is ninety days and [a] $500 fine. So, now you understand the penalties involved. Is that right?

"[The Defendant]: Yes, I do, Your Honor." (Internal quotation marks omitted.) *State* v. *Acampora*, supra, 176 Conn. App. 217–18.

"The court also canvassed the defendant concerning his education and experience with the law, as well as his obligation to educate himself on the relevant law and procedure and to comply with the same rules that govern attorneys during trial:

"The Court: And how far have you gone in school?

"[The Defendant]: I graduated high school.

"The Court: Can you read?

"[The Defendant]: Yes, Your Honor.

"The Court: All right. You know you have a right to counsel?

"[The Defendant]: Yes, Your Honor.

"The Court: All right. Have you ever been involved in a criminal trial before?

"[The Defendant]: In a trial? No, Your Honor.

"The Court: All right. Have you ever been the subject of a competency evaluation?

"[The Defendant]: No, Your Honor.

"The Court: Did you represent yourself during any cases at all?

"[The Defendant]: Criminally, no.

"The Court: Any cases at all, I said.

"[The Defendant]: Um, up at the appellate division in Hartford. Yes. Back in last year. Yes, I did. . . .

"The Court: All right. Are you familiar with the laws and rules of procedure regarding evidence, pretrial motions, voir dire for criminal trials?

"[The Defendant]: Um, no, Your Honor.

"The Court: All right. Are you familiar with the rules of discovery for criminal matters, sir?

"[The Defendant]: No, Your Honor.

"The Court: Do you realize that, if you represent yourself, the judge will be impartial and cannot advise you on the procedures, [substantive] issues in the case?

"[The Defendant]: I understand that now.

"The Court: All right. Are you familiar with plea bargaining?

"[The Defendant]: Yes, I am.

"The Court: Can you do that yourself?

"[The Defendant]: Yes. I believe I could.

"The Court: Okay. Are you—do you have access to a library to learn these things that you need to understand before you go to trial?

"[The Defendant]: Yes, I do, ma'am.

"The Court: Can you conduct yourself at a trial?

"[The Defendant]: I believe so.

"The Court: All right. So, you feel you possess the training, education, and experience and skill to represent yourself and to try the case yourself. Is that true, sir?

"[The Defendant]: Yeah. Yes . . . Your Honor.

"The Court: All right.

"[The Defendant]: I believe I can.

"The Court: You understand that you can't have an attorney and represent yourself? You either represent yourself, or you have an attorney represent you. You understand that, sir?

"[The Defendant]: Yes, I do.

"The Court: All right.

"[The Defendant]: But I have one question.

"The Court: And, at trial, you will be at the counsel table all by yourself. You understand that?

"[The Defendant]: Yes.

"The Court: You'll be sitting there presenting your case on your own. Now, when you have a criminal trial, you're expected to follow the rules and procedures that we make the lawyers follow.

"[The Defendant]: Okay. Can I have one of my—if someone decides to, can I have an attorney present in the courtroom while it's being—

"The Court: —You can't have the attorney sit with you at the table.

"[The Defendant]: I can't have anyone even sit—I don't want to have my—

"The Court: He—if he—he can sit—

"[The Defendant]: I'm sorry. Okay.

"The Court: —he can sit in the courtroom—

"[The Defendant]: That's fine. That's fine.

"The Court: —if you—

"[The Defendant]: He can hear the case.

"The Court: —he can sit in the courtroom, but—

"[The Defendant]: Excellent.

"The Court: —if you decide you want the attorney to represent you, that attorney would file an appearance and be present. You understand that?

"[The Defendant]: Yeah. No. I want to represent myself.

"The Court: All right. So, is it your wish today to proceed to trial and represent yourself?

"[The Defendant]: Yes, it is, Your Honor.

"The Court: Is this your decision?

"[The Defendant]: This is my decision in full.

"The Court: Are you making it voluntarily and of your own free will?

"[The Defendant]: Yes. Yes, ma'am.

"The Court: And no one has found—has threatened you or promised you. Is that right?

"[The Defendant]: That's correct." (Internal quotation marks omitted.) Id., 218–21.

[4] It is important to note that, at the time of trial, the trial court appointed standby counsel for the defendant.

[5] The defendant repeatedly asserted that he would not plead guilty or accept any plea offer except a nolle.

[6] We take this opportunity to express that, if a trial court refers a self-represented party to speak with a prosecutor, the court should also remind the self-represented party of the possible pitfalls of having such an uncounseled conversation.